HENRY JOHNSON v. THE STATE.

No. 13982.   Delivered April 15, 1931.
Rehearing Denied June 24, 1931.

The opinion states the case.

*W. S. Poston, J. W. Yancy* and *R. C. Musslewhite,* all of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ninety-nine years.

H. G. Etheridge was engaged in making small loans of money for the Central Finance Company. Appellant, who is a negro, owed the company $6.80, he having executed a promissory note in said sum payable to the company. Upon taking charge of the loan agency, H. G. Etheridge discussed the account with appellant in an effort to collect the amount due the company. Appellant told him that he did not have the money but would pay it in a few days. A few weeks later appallent went to Mr. Etheridge and told him that he was preparing to leave town and if he would drive him to old Lufkin he would get the money and pay off the note. Mr. Etheridge advised appellant that he did not have time to make the trip. Appellant then requested him to get someone else from the office to take him to old Lufkin. Mr. Etheridge got his brother, L. D. Etheridge, to make the trip with appellant. Appellant and L. D. Etheridge, deceased, drove to the home of appellant's mother, in deceased's car. Deceased stopped the car in front of the house and appellant got out and entered his mother's house. In a few minutes he returned to the car. According to the version of state's witnesses, deceased got out of the automobile as appellant approached. Upon reaching the car, appellant exhibited a pistol and shot deceased. Deceased backed around the automobile with his hands up, saying: "Oh don't shoot me any more; don't shoot me any more." Appellant fired two more shots, killing deceased. Appellant disguised himself in woman's apparel, and fled.

Appellant testified, in substance, that at the time he left with deceased to go to his mother's house, H. G. Etheridge told deceased to bring back the money or appellant; that after reaching home he entered the house and asked his mother for some money, which she said she did not have; that he was afraid to go back outside without arming himself, as he believed that deceased would kill him if he did not bring the money back;

that when he went outside and told deceased that his mother did not have the money deceased told him to get in the car and go back to the office with him; that he declined to enter the car, saying that all they wanted to do was to beat him up after they got him back to the office; that deceased seized the automobile crank, got out of the car and hit him with it; that he dodged and fired two or three shots at deceased; that at the time he shot deceased he believed deceased was going to kill him.

There is a great deal of testimony in the record to the effect that the loan company was charging an unlawful rate of interest, and that H. G. Etheridge had at times threatened to whip negroes who were slow in meeting their obligations. Mr. Etheridge denied that he had made such threats.

The court gave an unrestricted charge covering the law of self-defense. No charge on provoking the difficulty was given. Appellant sought to have the jury instructed, in substance, that he had a legal right to arm himself to repel or prevent deceased from executing threats to do him bodily harm. It is the rule that if the court does not limit the right of self-defense by a charge on provoking the difficulty, or otherwise, but gives the accused the perfect right of self-defense from every defensive theory, it is not error to refuse to charge on his right to arm himself and seek an explanation. Gatlin v. State, 113 Texas Crim. Rep., 247, 20 S. W. (2d) 431; Victery v. State, 29 S. W. (2d) 787; Williford v. State, 38 Texas Crim. Rep., 393, 42 S. W., 972, and cases cited in section 1950, Branch's Annotated Penal Code. We think the rule applicable here.

In his amended motion for new trial appellant alleged that the jury was guilty of misconduct in that after retiring and before arriving at a verdict they considered the fact that he was a negro and had killed a white man. We find nothing in the testimony heard on the motion that supports the averment as to misconduct. We deem it unnecessary to decide whether it was proper for the court to hear evidence in support of an averment of the nature disclosed by the motion.

Appellant urges in his brief that the testimony heard on the motion discloses that, during their deliberations, and before a verdict was reached, the jury received and discussed other testimony of a prejudicial nature. Upon the hearing, the juror Grimes testified, in substance, that he had been acquainted with appellant before the trial and that on his voir dire examination he had advised appellant's counsel that he had at one time paid appellant a small amount for having struck his wife with an automobile; that at a time during the deliberations when seven of the jurors stood for ninety-nine years and five for the death penalty he stated to the jury that if they knew appellant like he did they would convict; that he further stated to the jury that he had heard that appellant was a bootlegger and a mean negro; that after he made the statement he and

the other four jurors receded from the position that the death penalty should be assessed and voted for ninety-nine years. Only four jurors testified. Two of these stated that other than the evidence received on the trial nothing was discussd. The other juror testified that the statement attributed to the juror Grimes was not made until a verdict had been finally reached. He declared that the jury were awaiting the arrival of the judge when the statement was made, and that the penalty of ninety-nine years had been agreed upon before Mr. Grimes made his statement.

There was a conflict in the testimony as to when the alleged misconduct occurred. The testimony supported the finding that it occurred after the verdict had been finally reached. The settlement of the conflict in the testimony was a matter for the trial judge. The granting of a new trial for misconduct of the jury is largely in the discretion of the trial court, whose action in refusing a new trial will not be disturbed in the absence of abuse of such discretion. We are of the opinion that an abuse of discretion is not shown. Russell v. State, 109 Texas Crim. Rep., 654, 6 S. W. (2d) 760; Williams v. State, 102 Texas Crim. Rep., 624, 279 S. W., 462.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant makes a number of very general objections to our original opinion, supported by no reasoning or citation of authorities. He complains that we erred in not holding it error for the trial court to refuse to instruct the jury in regard to his right to arm himself just before coming back to the car in which deceased was. The law is correctly stated in the original opinion. Where the right of self-defense is submitted in the charge unrestricted by any charge on provoking the difficulty, or any other limitation, it is not necessary for the court to submit a special defensive issue based on the right of the accused to arm himself and seek his adversary. The authorities will be found collated in section 1950 of Mr. Branch's Annotated P. C. There seems no deviation from this uniform holding.

There is renewed complaint at the failure of the court to submit appellant's defensive theory in an affirmative way. As we read the record, what appears to be appellant's defensive theory was affirmatively submitted. The court told the jury that if they believed from the evidence, or had a reasonable doubt thereof, that at the time of the homicide deceased was making an attack on appellant, or that it reasonably

appeared to the appellant, from the conduct or acts or words of deceased, as viewed from the standpoint of the appellant at the time, in the light of all the facts and circumstances within his knowledge, that deceased was attacking or was about to attack him and that such conduct of the deceased, coupled with his words or threats, if any, caused him, appellant, to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such expectation or fear the appellant killed deceased, he should be acquitted. This appears to cover the defensive theory set up in appellant's testimony.

In view of appellant's insistence, we have again reviewed the testimony heard by the court below when the motion for new trial was presented, and are still unable to see any abuse of discretion of the lower court in overruling said motion. The two jurors, whose supposed unfairness and prejudice is made the ground of attack, both seem to have receded from their judgment as to the punishment which should be inflicted, and to have come to agreement with their fellows upon a lower penalty. The undisputed record shows that upon retirement and the first ballot taken thereafter, all the jurors voted guilty, and seven voted for ninety-nine years and five for the death penalty. Among those voting for the death penalty are the two jurors now asserted as having prejudice and ill-feeling against the appellant, and to have indulged in statements regarding him outside the record.

There seems no question at all of the fact of appellant's guilt, and the only question was the penalty. It would not be a very impressive proposition as supporting prejudice on the part of two jurors, that they came from a higher penalty to a lower, nor are we led to believe that anything was said by anyone in the jury room which brought before the jury any material matter affecting the rights of the accused.

The motion for rehearing will be overruled.

*Overruled.*