JOHN ARMSTRONG V. THE STATE.

No. 3662.   Decided December 5, 1906.

*1.*—Murder in First Degree—Conclusion of Witness—Res Gestae—Declaration of Third Party.

Where upon trial for murder the evidence showed that while the deceased and the witness were sitting near each other, the defendant approached and stabbed deceased, there was no error in the admission of the statement of said witness that all defendant had to do was to walk up and stab deceased like he did.

2.—Same—Declaration of Defendant—Threat—Res Gestae.

Upon a trial for murder where the evidence showed that the defendant was jealous of the deceased, who was his wife, and that he made a movement towards her shortly before the homicide with his drawn knife as he followed her, there was no error in admitting his declaration made about that time, that something was going to happen there that night.

Appeal from the District Court of Colorado. Tried below before the Hon. Munford Kennon. ·

Appeal from a conviction of murder in first degree; penalty, death. The opinion states the case.

No brief for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for murder in the first degree, the death penalty being assessed.

The bills of exception reserved are found in the stenographic report

of the statement of facts, and are a little difficult to understand or state as presented. The first assignment of error is upon the ruling of the court permitting the witness Ida Johnson to state, "all he had to do was to walk and stab her like he did." The objection urged to this is that it was merely the conclusion of the witness. Before urging this objection, the testimony locates the position of the parties— that is, the witness Johnson, deceased and the approaching of defendant. Ida Johnson was sitting near the back door and deceased was sitting right in the door with her face towards the street. That is, she was sitting rather with her side towards the door and right at the door. At this particular juncture the record shows, "Q. How far from the door was she? A. Right at the door. All he had to do was to walk up and stab her like he did." Here the objection was urged that this was merely the conclusion of the witness. We do not think there is anything in this objection. The testimony shows that while the parties were sitting in this position defendant approached from the outside and stabbed his wife (deceased) from which she died in about half an hour.

The next question presented by bill incorporated in the stenographer's report is to the language of the defendant occurring shortly prior to the homicide, which is thus stated: "I am fixing to start something here. If I do, I am going to be at the head of it." This is thus stated in the bill of exceptions. The stenographer's report shows that counsel objected to this expression, "something is going to happen here tonight." Objection urged to this was principally upon the ground that this did not refer particularly to the deceased; did not individualize her from other parties. In order to understand this it may be necessary to state that shortly before this homicide, deceased and witness Corporal were standing on the sidewalk in front of the house where the homicide occurred, which was a one-room restaurant. A woman who proved to be the wife of defendant approached defendant and had a talk with him. After the conversation, which was not understood by the witness, deceased started away from defendant, and remarked, "Come on in the house." He said, "No, I don't want to go in." Just as she was slipping in the door, defendant made a long step towards her. "He had a knife in his hand at the time, and he came back to me and says, 'that is my wife.' I says, 'is that so? I did not know you were married.' He said, 'Yes, that is my wife, and I am fixing to start something here, too.' Q. What was that? A. He said, 'That is my wife.' I said, 'I did not know you were married.' He says, 'Yes, that is my wife,' and he says, 'I am fixing to start something.' He says, 'If I do I am going to be at the head of it.' I says to him, 'Well, if I were you, if she did not want me I would not want her.' I says, 'There is plenty more good women in the world.' I says, 'You can get one just as good and maybe better.' He held his head up like he did not want any advice from me." Further questions were asked with regard to the knife,

its size, etc., and that it was open at the time of this occurrence. One of appellant's counsel remarked to the court, "If it please the court, we object to this testimony, because it is improper, wherein he states that he said something was going to happen there. He did not connect deceased's name with it, and there is nothing indicating a threat against deceased; and it is merely a conclusion of the witness, and we think it is improper and object to it, and ask the court to exclude it." The court refused to exclude the testimony, and among other things held that in his judgment it was res gestæ. It is a rule we think sufficiently established that a general threat is not admissible, unless there is something in the general threat that connects deceased with the threat, or is brought within the purview of the threat so as to indicate that the mind of the party making the threat referred to the party killed. This evidence shows, looking over the record, that appellant was jealous of his wife with reference to two or three negro men—(the parties all being negroes) that he had made no demonstration toward them that night, although there had been some ill-feeling on his part some hours before towards one or two of them. This was denied by the State, and by the very witnesses with whom appellant should have had the conversation. However, the acts of the defendant detailed by the witness Corporal, his movement towards his wife shortly before the homicide, with a drawn knife, as he followed her to the steps of the restaurant in which the killing occurred, and his subsequent leaving the front of the restaurant and going to the rear and stabbing her, we think sufficiently point this threat made by appellant, or this statement in the nature of a threat, to the deceased. These acts show with sufficient certainty to admit this testimony for the purpose of showing the feeling towards his wife, and his acts and conduct are sufficient to indicate that he had her specifically in mind at the time he made the statement, if it occurred immediately after he had advanced on her with the drawn knife. She was just entering the house at the very time that he had followed her, and when she reached the inside of the house, she returned to the witness Corporal. Under the condition of the record, we believe the admission of this testimony was authorized. We are treating this question from the standpoint of appellant's objection, and not from the standpoint of the reason given by the judge for the admission of the statement.

As we understand the record these are the principal questions presented. There are one or two other objections reserved in the stenographic report, but they are in such indefinite condition that they are hardly sufficient to require the court to review them, nor do we consider them of any material importance. As the record is presented to us, we believe there is no error of such importance as to require a reversal. Therefore the judgment is affirmed.

*Affirmed.*