Claude DeArman v. The State.

No. 4215.    Decided October 25, 1916.

**1.—Murder—Special Term of District Court—Special Judge—Plea in Abatement.**

Where, upon appeal, it appeared from the record that the regular judge had convened a special term of the District Court to select grand and petit jurors to try the defendant, and in the absence of the regular judge, the attorneys in attendance of the special term selected an attorney to serve as special judge who qualified according to law and empaneled the jurors, a plea in abatement, when the case was called, alleging that said special term, etc., was illegal, and moving to quash the indictment, was correctly overruled.

**2.—Same—Peremptory Challenge—Jury and Jury Law.**

Where the record disclosed that defendant did not exhaust all of his peremptory challenges, and no juryman unacceptable to him was forced on him, the contention that the court erred in requiring him to exhaust one of his peremptory challenges, presented no error.

**3.—Same—Jury and Jury Law—Death Penalty.**

Where the death penalty was not assessed, and in the absence of a complaint that any juror was challenged because of his answer to the question that if he were taken as a juror, and the evidence justified it, and the law required it,

would he hesitate to inflict the death penalty, there was no error; besides this was not an improper question, and was equivalent as to whether he had any conscientious scruples to inflict the death penalty.

### 4.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions failed to disclose as to what the witness would have testified, there was no reversible error; besides, the record showed that the witness testified in regard to all the matter about which defendant desired to question him.

### 5.—Same—Evidence—Examining Trial.

Upon trial of murder, a witness was properly permitted to state what he had testified to at the examining trial, as this was not secondary evidence, and the witness' statement taken at the time, could be used to impeach him.

### 6.—Same—Evidence—Impeaching Testimony.

Where, upon trial of murder, the defendant adduced in evidence a portion of the testimony given by a State's witness on another trial, for the purpose of impeachment, there was no error in permitting the State to introduce in evidence other portions of this testimony, relating to the same matter.

### 7.—Same—Evidence—Contradicting Witness.

Where a defendant's witness testifies that she was sick when the court adjourned on account thereof, and this matter was not seriously questioned, there was no error in refusing to permit defendant to prove that said witness was then really sick.

### 8.—Same—Insult to Female Relative—Evidence—Argument of Counsel.

Where, upon trial of murder, the defendant claimed that he killed deceased because of his improper relations with defendant's sister, the first time he met him after being so informed, there was no error in permitting the State to show that defendant and deceased had met before on several occasions since that time, and to introduce other testimony in rebuttal to defendant's contention as to trouble between his brother, etc., and the argument of State's counsel on such testimony was legitimate and presented no error.

### 9.—Same—Evidence—Prior Difficulty—Details Not Admissible.

Where testimony of a prior difficulty was incidentally referred to, and defendant was permitted to show that he received a cut therein, in an effort to separate some other parties, there was no error in refusing to permit defendant to go into details as to how he received such cut

### 10.—Same—Jury and Jury Law—Inability to Read and Write.

Where it was not shown that there was a sufficient number of qualified persons residing in the county of the prosecution, who could read and write, out of whom a jury could be empaneled, and it did not appear from the record that the juror was asked on his examination whether he could read and write. an objection on this account was properly overruled.

### 11.—Same—Sufficiency of the Evidence—Adequate Cause—Charge of Court.

Where the issue of adequate cause was fairly submitted to the jury, and the evidence sustained the conviction of murder, there was no reversible error.

Appeal from the District Court of Taylor. Tried below before the Hon. B. A. Cox, Special Judge.

Appeal from a conviction of murder; penalty, ninety-nine years in the penitentiary.

The opinion states the case.

*Ben L. Cox,* for appellant.—On qquestion of plea in abatement: Summerlin v. State, 153 S. W. Rep., 890; Abram v. State, 20 id., 987; Dunn v. Home National Bank, 181 id., 699.

On question that juror could not read and write: Sullenger v. State, 182 S. W. Rep., 1140; Johnson v. State, 17 id., 252; Martinez v. State, 57 id., 838.

On question of argument of counsel: Grimes v. State, 141 S. W. Rep,. 261; Derrick v. State, 187 id., 759; Miller v. Burgess, 136 id., 1174.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of special term of District Court: Brazell v. State, 26 S. W. Rep., 723.

On question of argument of counsel: McIntire v. State, 23 Texas Crim. App., 56; Bost v. State, 64 Texas Crim. Rep., 464.

On question of defective bill of exceptions: Barbee v. State, 58 Texas Crim. Rep., 129.

HARPER, Judge.—Appellant was convicted of murder and his punishment assessed at ninety-nine years confinement in the penitentiary.

Shortly after the homicide Hon. Thomas L. Blanton, judge of the District Court, by order duly entered, convened a special term of the court to meet on April 27th. On that day a jury commission was duly sworn and empaneled and instructed to select a grand jury and draw petit jurors. The jury commissioners performed their duties, and the court ordered the sheriff to summon the grand jurors to appear on Monday, May 1, when the court recessed until that day. On May 1 Judge Blanton was absent, and after the sheriff had called court, the lawyers in attendance selected Hon. B. A. Cox to serve as special judge. Judge Cox took the oath required by law, and proceeded to empanel the grand jury. The grand jury thereafter returned into open court an indictment charging appellant with the murder of Charlie Brown. Upon the return of the indictment appellant was brought into open court and his cause set down for trial on May 5. A special venire was regularly drawn, and the sheriff ordered to summon the jurors. making his return on May 4th.

When the case was called for trial appellant filed a plea in abatement, reciting the facts as above stated in substance, alleging that such special term was, for the reasons stated, illegal, and the indictment should be quashed. The court did not err in overruling the plea. Our laws specifically provide for the calling of special terms of the District Court and the election of special judges. Arts. 93 and 94, C. C. P., and art. 1678, Rev. Civ. Stats.

Appellant in a bill of exceptions complains that the court erred in requiring him to exhaust one of his peremptory challenges on the venireman J. D. Gaither; that the court should have sustained his challenge for cause. As the record discloses that appellant did not exhaust all

of his peremptory challenges, and no juryman unacceptable to him was forced on him, this bill presents no error.

Appellant also complains that State's counsel was permitted to ask the jurors: "If you are taken as a juror and the evidence justifies it, and the law requires it, would you hesitate to inflict the death penalty?" This was not an improper question, and would be but one of the tests to ascertain whether or not the juror had any conscientious scruples against the infliction of death for crime. Besides this, the death penalty was not assessed in this case, and appellant does not contend that any juror was challenged or stood aside because of his answer to this question.

In bills Nos. 5, 6 and 7 appellant complains that the court would not permit him to propound to Mrs. J. H. Hicks certain questions. Nowhere in either of the bills is it stated what Mrs. Hicks would have answered or testified to in regard to the several matters complained of. The questions all related to matters occurring some three or four years prior to this homicide and could have had but little, if any, bearing on the issues involved in this trial. In addition, in reading this record it is made manifest that Mrs. Hicks did testify in regard to all the matters about which appellant desired to question her, and doubtless the court ruled as he did to prevent a repetition of the same testimony.

The witness Roy Barker was properly permitted to state what he testified to at the examining trial. The written statement, taken at the time, could be used to impeach him, if he did not so testify. His stating what he testified to would not be secondary evidence.

When the defendant introduced a portion of the testimony given by Mrs. Hicks on the trial of Edgar DeArman for the purposes of impeachment, there was no error in permitting the State to introduce other portions of this testimony relating to the same matter as that portion introduced by defendant related to. When a portion of a statement or testimony is offered in evidence, then all the statement bearing on that matter, testified to at the same time, is admissible to render the meaning clear. Art. 811, C. C. P.

There was no error in refusing to permit appellant to introduce evidence to prove that Miss Hixie DeArman was really sick when court adjourned on account of her illness. She so testified, and by her cross-examination on that point her testimony in regard thereto was not seriously assailed nor questioned.

Appellant claimed on this trial to have killed deceased because of his relations with his sister, Miss Lula DeArman, and insult to his sister, Miss Hixie DeArman.

His contention was that he killed deceased the first time he met him after learning of these matters. Under such circumstances there was no error in the court permitting the State to elicit from Terry DeArman on cross-examination that he had discussed with appellant some three years prior to this time this matter, and to prove by other witnesses that appellant and deceased had met on several occasions since that

time. And as appellant was contending there was trouble existing between Will DeArman and Edgar DeArman at the time Edgar shot and killed Will, and was further contending that appellant had testified against Edgar at the time he was convicted, it was permissible for the State to show that at that time there were rumors afloat that Will DeArman and his sister, Lula, were engaging in improper relations. Appellant's sister, Lula, gave birth to a baby at about that time, and while appellant was introducing testimony that deceased may have been the cause of his sister's ruin, it was permissible for the State to show, if it could do so, that no improper relations existed between deceased and Lula, and that improper relations existed between her and her brother Will, and that appellant knew of it and had discussed the matter with his brother Terry. Appellant had introduced Terry to show that deceased was guilty of improper relations with his sister, and there was no error in the court permitting the State to draw from the witness on cross-examination the following statement: "Me and the defendant, Claude, had discussed, prior to the killing of Charlie Brown, the relations between Will DeArman, my brother that was killed, and my sister Lula DeArman. As to whether we had discussed the fact or the alleged fact that my dead brother, Will DeArman, had been having sexual intercourse with my sister, Lula DeArman, from the time she was fourteen years old until Will DeArman was killed, we had suspicioned it and talked of it to that effect. I did not see the affidavit made by my sister Lula. I don't know whether I was in town with her the day she made it. She told me she made an affidavit; that's all." And after this testimony was introduced, the comments of Mr. Cunningham thereon in his argument were legitimate. and the bill complaining of such remarks presents no·error.

The court did not err in refusing to permit appellant to go into details of how he received a cut several years before this difficulty. The only way it was referred to by State's witnesses was that Mr. Gist referred to it incidentally as fixing the time of a certain occurrence in 1915, a year before this killing occurred. Appellant was permitted to and did testify that he received it in an effort to separate some other parties engaged in a fight.

The only other question raised in the record before us is that the juror J. W. Glaze, who served as one of the jurors in this case, could not read nor write. We might. pass this off by stating that the juror swears no such question was asked him on his examination. Under such circumstances objection after verdict would come too late. But subdivision 14 of article 692 provides, that this cause for challenge shall not be sustained when it appears to the court that the requisite number of jurors able to read and write can not be found in the county  Without wishing to reflect on the citizenship of Taylor County (if it should be a reflection), we will say that in the testimony heard appellant offered no evidence that a sufficient number of jurors resided in Taylor County who could read and write from whom to select a jury. Even

had the court known at the time the juror was empaneled that he could not read nor write (which he did not), still unless it was shown there was a sufficient number of qualified persons residing in Taylor County who could read and write, out of whom a jury could be empaneled, we would not be authorized to review the action of the court in overruling the motion for a new trial on this ground.

We have not undertaken to give a synopsis of the testimony. The details of the killing as detailed by appellant are horrible. The only issue in the case as made by him is, did the evidence show that his mind was so inflamed by an adequate cause as to reduce the offense to manslaughter. This issue was fairly submitted to the jury in the court's charge; all legitimate evidence bearing on that issue tendered was admitted, and the jury was fully authorized to find on the testimony we have before us that the killing occurred in accordance with a predetermined determination to kill while appellant's mind was cool and collected, and that he was perfectly cool and collected when he ran Brown down and killed him.

The judgment is affirmed.

*Affirmed.*