## J. W. GRAHAM V. THE STATE.

No. 15340. Delivered December 21, 1932.
Rehearing Denied March 8, 1933.
Reported in 57 S. W. (2d) 850.

122

The opinion states the case.

*L. J. Brucks*, of Hondo, and *L. D. Hill*, of San Antonio, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The conviction was under article 359 of the Penal Code for the giving of a false certificate by a county clerk. The punishment assessed at confinement in the penitentiary for two years.

The record shows two orders in reference to change of venue, first from Uvalde county to Kendall county, and from Kendall county to Medina county.

It is alleged in the indictment that the appellant was clerk of the county court of Uvalde county and did unlawfully and wilfully give to Mrs. H. C. King, county treaturer of Uvalde county, Texas, on or about the 20th day of May, 1927, a false certificate in writing, as follows:

"No. 21287

"THE TREASURER OF THE COUNTY OF UVALDE          $1188.55

"STATE OF TEXAS

"Will pay to J. W. Graham or order the sum of Eleven Hundred Eighty Eight and 55/100 Dollars out of the Imp. Fund, being the amount allowed by the County Commissioners Court of said County at their May Term, 1927.

"Witness my hand and seal of said Court at Uvalde, Texas, this 20th day of May, 1927.

"J. W. GRAHAM, County Clerk.

"For Trans—Records T & Brank & Marks

"Min Book_____

"Page_____

"_____
                        Deputy

"(SEAL)

"No._____

"Registered the_____day of_____192__ .

"_____

County Treasurer."

It is admitted by the appellant that he was clerk of the county court of Uvalde county on the 20th day of May, 1927. The state offered the record of accounts allowed for the May term, 1927, of the commissioners' court of Uvalde county. The record showed that at the May term of the commissioners' court in Uvalde county in 1927 a claim was presented by the appellant for $8.55 for transcribing record, brands, and marks, which was allowed by the commissioners' court as appeared from the record of said meeting. The record further shows that no showing was made to the court or jury by the state or appellant by minutes of accounts allowed that there was any accounts presented, allowed, or approved for $1,188.55 at its May term, 1927. It is also testified by a state's witness that he was familiar with the handwriting of the appellant, and the instrument set out in the indictment for $1,188.55 was signed by the appellant and the rest of said instrument was in appellant's handwriting.

The witness B. W. Hillis testified that he was cashier of the Sabinal State Bank and he knew the appellant. He also identified the instrument set out in the indictment as one that he had received from the appellant through the mail, and he had sent said instrument to the Commercial National Bank of Uvalde, and when they received the money on it that it was credited to appellant's account.

Mrs. H. C. King testified that she was county treasurer of

Uvalde county in May, 1927, and that the warrant described in the indictment and offered in evidence, dated May 20, 1927, in the sum of $1,188.55, was presented to her as county treasurer and paid for the full amount on June 8, 1927.

Green B. Fenley, Jr., testified that he was county judge of Uvalde county and held that position in May, 1927; that he knew the appellant, who was county clerk of Uvalde county in 1927. He further testified that he had a recollection of an account being presented by the appellant for $8.55, for transcribing, at the May term, 1927, but the only time he had seen the warrant for $1,188.55 was when it was shown to him in the grand jury room in September, 1927. He also testified that no such account was approved or ordered paid by the commissioners' court while he was in attendance upon the court.

Two other witnesses testified that they were members of the commissioners' court of Uvalde county in May, 1927, and they had no recollection of the commissioners' court allowing in the May term, 1927, any account of the appellant's for $1,188.55.

The appellant did not testify nor offer any evidence.

There is a bill of exception reserved to the action of the trial court in refusing to grant a new trial because of misconduct of the jury in referring to the failure of the appellant to testify, which occurred during their retirement and while they were considering their verdict. The court heard testimony as to the alleged misconduct of the jury and overruled the motion for new trial. Said testimony so heard is brought forward as part of the record in this case. The testimony of five of the jurors who sat in the case was heard on said issue.

The juror Binderly testified that they talked about appellant not being on the stand. He further testified as follows: "We said if he had got on the stand we might have had a better way to decide. I do not know that we had any discussion about the failure of the defendant to get on the stand, we just said that if he had gone on the stand we might have had a different idea." He further testified that when the defendant's failure to testify was mentioned, the foreman immediately called the juror making said statement attention to the fact that he did not have to testify and that that could not be considered.

The juror W. J. Brook testified that after the jury retired to consider their verdict in the case, the matter of defendant's failure to testify was discussed two or three times and it was discussed before the verdict had been agreed upon. That this discussion was had on two or three occasions and he did not recall how many different jurors made reference to defendant's

failure to testify; that he remembered that some member of the jury did discuss that it was funny that defendant did not take the stand and testify, and that such discussion was had prior to arriving at a verdict. Said statement was not used as an argument to convince any of the jurors that he ought to vote guilty; that what he meant in saying that it was discussed was that some one made the statement that it looked funny defendant did not testify.

The juror Koenig testified that he couldn't remember what was said in reference to defendant's failure to get on the stand. but it was mentioned once or twice; that it was just mentioned that he did not get on the stand. This was before they arrived at a verdict; that he didn't know what juror made the remark; that the foreman made the statement that the defendant's failure to take the stand could not be considered and this was as far as the discussion went.

The juror Haby testified that it was mentioned that defendant did not get on the stand and testify; that this was mentioned once or twice prior to the time the verdict was agreed upon; that he didn't know what juror made the remark, and when the remark was made that the foreman informed the jury that that matter could not be considered and that was as far as the matter was discussed; that the remark in reference to defendant's failure to testify was a general statement and it occurred at least twice.

Alfred Brooks, foreman of the jury, testified that after the jury's retirement to consider their verdict, he heard the remark made by some member of the jury to the effect that the defendant did not offer any testimony and did not himself testify, and he then told the juror making the remark that defendant did not have to testify; that one juror, after the foreman had made the statement that the defendant did not have to testify, made the following remark, "It looks like he would have got on the stand." That this was at the same time and he called their attention to the fact that defendant did not have to testify; this was before any ballot was taken. He further testified that it was never discussed but it was mentioned probably three times; the first two times by the same member of the jury, and right then he could not say who it was mentioned it again, but he heard it mentioned but he did not hear the matter used as an argument of any juror to some other juror.

While the testimony of one of the jurors might tend to show that there was a discussion by the jurors of the accused's failure to testify, the testimony of the other jurors tends to show that it was a mere reference to the fact that the accused

failed to testify. This court has held that a mere reference to the fact that the accused failed to testify, by a juror, unaccompanied by any discussion in their retirement, is not in every case a ground for reversal. Leslie v. State (Texas Crim. App.) 49 S. W., 73; Mason v. State (Texas Crim. App.), 81 S. W., 718; Hammonds v. State, 114 Texas Crim. Rep., 394, 23 S. W. (2d) 372; Vinson v. State, 96 Texas Crim. Rep., 307, 257 S. W., 905; Dyer v. State, 96 Texas Crim. Rep., 301, 257 S. W., 902. The opinion is expressed that the conclusion was warranted under the testimony of the jurors that if any reference to the matter was made it constituted a mere casual mention which was not followed by any discussion of appellant's failure to testify, and further we are of the opinion that the trial court was warranted in finding that appellant's failure to testify was not considered by the jury as a circumstance against him. There being a conflict in the testimony, as we view it, on this issue, and the testimony warranting the finding of the trial court on this issue, we would be unauthorized to order a reversal. The granting of a new trial for misconduct of the jury is largely in the discretion of the trial court, whose action in refusing a new trial will not be disturbed in the absence of abuse of such discretion. Lamb v. State, 98 Texas Crim. Rep., 358, 265 S. W., 1035; Williams v. State, 102 Texas Crim. Rep., 624, 279 S. W., 462; Johnson v. State (Texas Crim. App.), 40 S. W. (2d) 111.

Appellant's motion to quash the indictment contained 16 objections urged jointly and severally, many thereof referring to related and overlapping issues. It is appellant's contention, as we understand it, that the indictment is fundamentally erroneous and charges no offense under article 359, P. C., and an offense under such statute can be committed only upon two false state of facts, each being a felony, towit, certifying (a) that any person has done any act whatever; and (b) that such person is entitled to any right whatever; and that the indictment by averment has alleged the effect of the instrument made a basis of the alleged offense to mean and imply that an account had been allowed by the commissioners' court, which averment (if an account had not been approved) does not state an offense known to the law within the purview of said article 359, the statute under which the purported indictment is predicated. Article 359 of the Penal Code provides: "If any such clerk [of a court] shall give a false certificate, stating that any person has done any act whatever, to which he had a right to certify, or that such person is entitled to any right whatever, when such clerk may by law give such certificate if the same were true,

he shall be punished as directed in the preceding article." The punishment for said offense is set out in article 358 of the Penal Code of Texas. The indictment charges in substance that "the appellant was the duly qualified and acting clerk of the county court of Uvalde county, Texas, and as such clerk did then and there unlawfully and wilfully give to Mrs. H. C. King, county treasurer of Uvalde county, Texas, a false certificate in writing." Following this averment, the false instrument is set out. Immediately following the instrument, we find this allegation: "Which said certificate was then and there given, stating that he, the said J. W. Graham, had performed the services of transcribing records, 'T' brands and marks and said account for said services had been allowed by the county commissioners of said county at their May term, 1927, to which matters contained in said false certificate, he, as such clerk, had a right to certify and might by law have given said certificates if said matters were true. Whereas in truth and in fact said matters contained in said certificate were and are false, in this, that the said account had not been allowed by the county commissioners' court of said county at their May term, 1927, nor at any other time, and the said J. W. Graham, county clerk as aforesaid, at the time of making and giving said certificate knew that the same was false."

The opinion is expressed that, considered in its entirety, it is clear that the only allegation that the instrument set out in the indictment as being false was that the said account had not been allowed by the county commissioners' court of Uvalde county at their May term, 1927, nor at any other time. The other element of the statute nowhere enters into the offense charged, and it is therefore not duplicitous as contended for by the appellant. We think the indictment sufficient and the motion to quash same was properly overruled. See Wilson's Tex. Crim. Forms, sec. 167.

It is contended by appellant that the venue is not proven by sufficient evidence. The indictment alleged the commission of the offense in Uvalde county, and appellant contends that the showing is not sufficient that the instrument was actually filled out in the county of Uvalde, and that it was reversible error for the trial court to overrule appellant's motion for an instructed verdict because of the failure to establish venue as alleged in the indictment. Considering the facts proven together, we believe the evidence reasonably sufficient to show that the offense was committed in the county alleged. It is not required that venue should be established by direct testimony nor that it should be proven beyond a reasonable doubt.

Venue may be proven by circumstantial evidence, as any other fact, and if the evidence be reasonably sufficient to satisfy the jury that the offense was committed in the county alleged, their finding on that issue will not be disturbed on appeal. Branch's Ann. P. C., sec. 451; Belcher v. State, 161 S. W., 459; Hoffman v. State, 12 Texas App., 406.

Appellant contends that the court erred in the submission of paragraph 2 of his main charge, which is as follows: "You are instructed that the instrument of writing described in the indictment is such a certificate as comes within the purview of the law, and that a clerk of a county court has the lawful authority and right to give such certificate, if the matters therein stated are true." It appears to be the theory of the appellant that the issuance of the warrant complained of (set forth in the indictment in haec verba) was not and did not constitute the offense of the issuance of false certificate within the purview of article 359 of the Penal Code. The instrument set out in the indictment was shown to be entirely in the appellant's handwriting and signed by him and was a warrant drawn on the county treasurer of Uvalde county for $1,188.55, bearing the seal of said county and signed by appellant as county clerk and purported to be by authority of the commissioners' court of said county. The county clerk is ex-officio clerk of the commissioners' court. Article 1940, Revised Civil Statutes. All warrants issued against the county treasurer shall be signed and attested by the clerk or judge of the court issuing same, under his official seal. Article 1643, Rev. Civil Statutes. The courts have held that a copy of an order of the commissioners' court allowing a claim certified and attested by the clerk, under the seal of the court, is sufficient to justify the county treasurer in paying the amount from county funds. Callaghan v. Salliway, 5 Texas Civ. App., 239, 23 S. W., 837. We are therefore constrained to hold that the trial judge was not in error in his instructions to the jury complained of.

Appellant also complains of the want of sufficiency of the evidence to warrant and sustain a conviction. A review of all the evidence before us leads this court to believe that the evidence is amply sufficient to support the verdict and judgment in this case.

Finding no error that would call for reversal of this case, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Touching the criticism of the indictment, we adhere to the conclusion stated in the original opinion.

Concerning the alleged misconduct of the jury, the following observations are made: The language used in article 710, C. C. P., 1925, reads thus: "But the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." The construction put on this statute has been held applicable to jurors when, in their retirement, it was shown by their conduct that the silence of the accused was taken as a circumstance against him. The bare allusion or reference to the failure of the accused to testify has been held not a violation of the statute. The question on appeal is whether the facts make evident that the appellant's failure to testify was taken by the jury as a circumstance against him. See Cooper v. State, 75 Texas Crim. Rep., 266. On appeal, the decision of the trial judge will prevail when the evidence is conflicting as to whether the jurors disobeyed the statute. A reversal will not result unless from the evidence heard on motion for new trial convinces this court that, in overruling the motion, the trial court abused its discretion. See Scrivnor v. State, 50 S. W. (2d) 330. See page 332 for citation of authorities.

Statements by the jurors, as in the present case, that the fact that the accused did not testify was "discussed" is regarded as a mere conclusion. It states no detail. It suggests debate, exchange or reasons, disputation, examination in detail. See Webster's New International Dictionary, p. 638; Corpus Juris, vol. 18, p. 1138.

The term "discussed," as it appears in the present record, conveys to this court no information as to the words, argument or illustrations made by the jurors, if any were made, and if there was argument, its nature, whether for or against the accused. This court, in order to overrule the trial judge, should have more information than can be obtained from the mere statement that the silence of the accused was discussed by the jurors. The presence of the trial judge at the hearing of the motion gave him knowledge of all the language used, while in the record there is but the descriptive statement that there was "discussion."

Applicable, we think, is the statement of this court in Smith's case, 52 Texas Crim. Rep., 344, from which we quote as follows: "We think the true rule is that where, as in this

case, the testimony supports the verdict, and the charge of the court properly submits the case to the jury, that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case·tried according to law where the conviction is supported by the testimony, unless the court may fairly and reasonably see in the light of all the circumstances that such reference and discussion did or might have prejudiced the appellant's case."

See, also, Scrivnor v. State, 50 S. W. (2d) 329.

The motion for rehearing is overruled.

*Overruled.*