LEO LERA v. THE STATE.

No. 22075. Delivered May 6, 1942.
Rehearing Denied June 24, 1942.

The opinion states the case.

*Marsene Johnson, Jr.,* of Galveston, *C. L. Dutton,* of Richmond, and *Tom Branch,* of Houston, for appellant.

*Chas. H. Theobald,* County Attorney, and *Emmett Magee,* Assistant County Attorney, both of Galveston, *R. A. Bassett,* District Attorney, of Richmond, and *Clyde Kennelly,* County

Attorney, and *Ed Risinger,* both of Rosenberg, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment is assessed at death.

The record shows that appellant was indicted in the District Court of Galveston County for the offense of murder with malice aforethought, which offense is alleged to have been committed on or about the 25th day of December, 1938. The trial from which this appeal is being prosecuted is the third trial of the case. The two previous trials were held in Galveston County and each resulted in a verdict of guilty and the assessment of the death penalty, The judgment in each of said cases was reversed by this court. The opinion delivered on the first appeal may be found reported in 134 S. W. (2d) 248, and that on the second appeal in 148 S. W. (2d) 431. After the judgment was reversed on the second appeal, the court changed the venue from Galveston County to Fort Bend County, where appellant was again found guilty and his punishment assessed at death, from which conviction he prosecutes this appeal.

The evidence adduced upon the trial from which this appeal is prosecuted is not materially different from that on the former appeals, and since the substance of all the material evidence is set out in the opinion delivered on the first appeal, we deem it unnecessary to here re-state the same.

Appellant brings forward six complaints. Some of them relate to the admission of evidence and others to the court's action in overruling his motion for a new trial based on misconduct of the jury and the reception of evidence other than that submitted to them under the ruling of the court.

It appears to us that his main complaint is based on the alleged misconduct of the jury in this respect,—that the jurors, after retiring to consider their verdict were advised by some member that appellant, upon a former trial, had been convicted and awarded the death penalty; that this matter was discussed by the jurors before they arrived at a verdict, which consciously or unconsciously influenced them in assessing his penalty at death. If his contention relative thereto is supported by the evidence in the record, then he would be entitled to a

reversal of the judgment. The burden of proof rests upon the appellant to substantiate the allegations in his motion.

In order that this opinion may more clearly reflect the basis for our conclusion on the subject, we deem it proper to set forth the salient facts proven upon the hearing of the motion for a new trial. It occurs to us that by the process of elimination we may arrive at a definite conclusion on the question presented. The record reflects that on the first ballot and before any claimed mention was made of the former trial, all of the jurors voted guilty. Only one juror, Sam Aylor, had any information prior to the time that he was selected as a juror, that the appellant had been theretofore tried and convicted. This juror testified that he had been informed (but by whom is not disclosed by the record) that upon one of the former trials appellant had received the death penalty and upon the other, life imprisonment; that he did not remember whether or not he mentioned it in the jury room. If this juror had information prior to the time that he was selected as a juror, can it be said that he received new or additional evidence in the jury room which may have influenced him in his decision as to the punishment that should be assessed against the appellant? We think not. Jurors Miller, Braeuer, Engeling and Christian did not hear any such remark and had no knowledge thereof. Consequently they could not have been influenced by anything of which they had no knowledge. Juror Baldwin testified that he did hear the remark made by some one in the jury room that the defendant had been tried before but did not hear anyone say what penalty was assessed. The fact that appellant had been tried before was brought to the knowledge of the jurors during the introduction of evidence by inquiring of some of the witnesses by counsel if they had not testified to certain facts upon the former trial. Consequently the fact that appellant had been tried at a former time was brought to the knowledge of the jurors during the development of the case and not while they were considering their verdict. Inasmuch as the result of the former trial was not made known to the juror, he could not have been influenced thereby. Therefore, he passes from the scene of the controversy.

Mr. Schroeder testified that he was for the death penalty on the first ballot before he heard any remark as to the result of the former trial. He further testified that he did hear some one say that he had heard that the defendant received the

death penalty upon the former trial and life imprisonment upon another trial; that this was just casually mentioned; that he did not remember who made the remark because he was not interested therein. It occurs to us that since this juror was for the death penalty before the remark was made, he could not have been influenced thereby. Moreover, he was not interested enough in the remark to remember who made it.

Mr. Sydow testified that at the time he was selected as a juror he did not know that the defendant had been theretofore tried and given the death penalty; that he heard of it before the evidence was concluded but did not remember who made the statement; that said statement was not used by any juror in the discussion of the case; that it was just a casual remark. He further testified that he first voted for life imprisonment and then changed to the death penalty; that he did not remember whether he did so before the remark was made or thereafter. If he changed before it was made, it certainly did not induce him to change his mind. If he changed after he heard the remark, then the burden was on appellant to prove that fact. Under such uncertain and equivocal testimony, we would not be justified in holding that the trial court abused his discretion to the prejudice of the appellant in overruling the motion for a new trial as to said juror.

Juror Roehr testified that after he was selected as a juror but before he had made up his mind as to what punishment should be awarded to the defendant, he heard some member of the jury say that he had heard that the defendant had received the death penalty upon a former trial; that this was news to him but he did not think that anyone tried to use it in order to make some one vote for a heavier penalty; that the remark was not used by them when they were arguing about the penalty to be assessed; that it was just a casual remark.

Mr. Cumings testified that at the time he was selected as a juror he had no knowledge of the result of the former trial, but that he knew from the evidence introduced that there had been a former trial; that he believed that something was said in the jury room about defendant having received the death penalty on the previous trial, but this was not made before they reached a verdict; that it was made while they were balloting on the sentence; that he did not know exactly what time he heard the remark; that he did not know whether it was before

or after they had reached their verdict; that whoever made the remark said that he believed that appellant had received the death penalty at Galveston and that was the reason the case was sent to Fort Bend County. Analyzing the testimony of this juror, it occurs to us that it is just about as certain .that the remark was made after they had arrived at their verdict as that it was said before they did so. It seems that if the remark was made as claimed by appellant, it did not make enough impression upon either of the jurors who claimed to have heard it to remember who made it.

The testimony of the jurors, when stripped of all immaterial verbiage, amounts to this,—that some juror remarked that he had heard that on a former trial appellant had the death penalty assessed against him, but the matter was not discussed among them, nor did anyone attempt to use it as a "prize-pole" on any of the jurors in order to bring about the infliction of the death penalty. Consequently we would not be justified in concluding that any use was made of the claimed remark by any of the jurors to the prejudice of the appellant. Eight members of the jury stood for the death penalty at the start and four were either undecided or were for life imprisonment. Would we be justified in holding that a matter which was merely mentioned but not discussed and not used as an argument to induce any or all of the jurors to change from life imprisonment to the death penalty was the result of the remark complained of? We think not. In our opinion, the evidence adduced upon the trial shows a reckless disregard by appellant for human life and an unsatiable desire to kill. This, in all probability, was the moving cause in the change of the jurors on the punishment rather than the casual remark complained of. It would seem unusual for twelve men whose duty it was to determine the punishment to be assessed against a defendant to immediately agree upon the penalty. It is not expected. If such were demanded, then there would be no need of holding a jury after the first ballot on the question. The law requires that they be held a reasonable length of time in which to reach an agreement.

In the case of Smith v. State, 52 Tex. Cr. R. 344, this court, speaking through Judge Ramsey, said:

"We think the true rule is that where, as in this case, the testimony supports the verdict, and the charge of the court properly submits the case to the jury, that a verdict ought not

to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried according to law where the conviction is supported by the testimony, unless the court may fairly and reasonably see in the light of all the circumstances that such reference and discussion did or might have prejudiced the appellant's case."

In the case of Polanco v. State, 117 S. W. (2d) 792, a similar question as the one here presented arose. In that case the matter did not arise exactly at the same time that it did in the present instance. However, in that case, when three jurors had been selected, one of them, in the presence of the deputy sheriff, stated to the other two jurors that the defendant had received the death penalty at a former trial. The deputy sheriff told them not to discuss the case and no further discussion took place until the jury retired to deliberate. The only difference between that case and this one is that only two jurors were informed of a former trial of the defendant and the result thereof and the deputy sheriff told them not to discuss the case, while in this case, probably four or five jurors were informed of the result of the former trial but no one told them to refrain from discussing it; that they did not discuss it in this case. Consequently there is no material difference.

In the case of Polanco v. State, supra, this court approved and re-affirmed the holding in the Smith case supra.

Appellant cites us to McDougal v. State, 81 Tex. Cr. R. 179; Pafford v. State, 135 S. W. (2d) 990; and a number of other cases as sustaining his contention. In the McDougal case, the jury *discussed* the defendant's former conviction. It appears from the opinion that the jurors were divided as to the punishment, and when an agreement among them seemed hopeless, one of the members who held out for the highest punishment said:

"Well, in the former trial the jury gave McDougal twenty years, and I think that the anguish that he has. undergone for the past year, we will just disregard that year and give him nineteen years."

This they did and assessed his punishment at nineteen years, which demonstrates the effectiveness of the argument.

In the case of Pafford v. State, supra, it was averred in the motion for a new trial that Grady Calvin, one of the jurors, said:

" 'I have known the defendant for several—three or four years, and he works over at Lewis Templins' filling station and I don't know for certain whether or not he has been bootlegging or transporting whisky.' Whereupon another member of the jury * * * remarked: 'Well, I know this fellow now, and have known him ever since I put in my filling station in the "Y" in the North part of Brownwood in the vicinity of where the defendant worked and that place where he worked over there all time he was in Brownwood, is a regular bootleggers' hangout and run by a bunch of bootleggers'."

Upon the hearing of the motion, Mr. Buhler, foreman of the jury, denied that he made the statement attributed to him by Juror Calvin but admitted that such statement or one of like import was made by some member of the jury; that one of the jurors, during their discussion of the case, remarked:

"Well, if he worked over there in a bootlegging joint, they were probably all of the same stripe, and if he knew what kind of a place it was, and he was not a bootlegger, he ought to have quit."

It clearly appears from the foregoing statement that some member of the jury, while they were considering their verdict, related facts to their fellow jurors that were not in evidence before them, and that they considered it and discussed this matter among themselves. To the same effect are all the other cases cited by appellant. Hence we overrule his contention.

In the case of Morrison v. State, 39 Tex. Cr. R. 519, this court, speaking through Judge Henderson, said:

"The mere statement cf that fact in the jury room may not have operated to the prejudice of appellant. Before a case would be reversed on this ground, some prejudice must be shown. The bare statement that a former jury had tried the case, and rendered a certain verdict against defendant, would not ordinarily cause a reversal."

Appellant next complains of the testimony given by the witness, John Miranda, who, while being interrogated by the State, was asked the following question:

"I will ask you if you saw Leo Lera do anything out there to anyone of your party and to whom? A. I saw this Leo Lera

here deliberately and in cold blood shot down my own friend there that night, without giving him one chance whatsoever."

To this testimony appellant objected on the ground that it was an opinion or conclusion of the witness, but before the court could rule on the objection the witness said, "That's right, he didn't." The court sustained appellant's objection and instructed the jury not to consider it for any purpose. Appellant contends, however, that notwithstanding the court's instruction, the evidence was of such prejudicial nature that it could not effectively be withdrawn from the jury. Obviously, this was an opinion or conclusion, and if it stood alone without any evidence which would logically lead to such a conclusion, a very serious question would be presented, but the bill is qualified by the court who states in his qualification that the witness testified without objection as follows:

"Well, I saw that man Leo Lera there (pointing) shoot and kill Harry Phillips. Before he shot Harry Phillips, I saw that man Leo Lera there (pointing) hit him in the face with his fist. Harry, during the whole proceeding leading up to the time that he was shot, was still practically in the same position that I described to you gentlemen a few minutes ago; in other words, he never did get his foothold; in other words, he never got up on his feet from the time Lera hit him."

The court, in connection with the qualification of the bill refers to Miranda's testimony as the same appears on pages 19, 20 and 22 of the statement of facts. An examination of his testimony, referred to by the court, shows that the witness had testified that the deceased, Phillips, was sitting on a stool at the counter of the cafe with one arm resting on the counter and one foot just about touching the floor when appellant struck him with his fist and then before Phillips got straightened up, appellant shot him before there was any chance for him to do anything. With the testimony before the jury, as set out in the court's qualification, we feel that the conclusion expressed by the witness was a reasonable inference from the testimony, and the jury could not logically reach a different conclusion.

In the case of McCormick v. State, 52 Tex. Cr. R. 493, a witness expressed an opinion, and this court, in disposing of the question, said:

"Clearly these are not matters which the witness Austin, as a physician, was justified or authorized to give an opinion about, but his answers are so self-evident that no sane mind could question the accuracy of the facts stated by him."

In the case of Armstrong v. State, 98 S. W. 844, 50 Tex. Cr. R. 467, the opinion reflects that a witness was asked the following question:

"How far from the door was she? A. Right at the door. All he had to do was to walk up and stab her like he did."

In disposing of the question, Judge Davidson, speaking for the court, said:

"The testimony shows that while the parties were sitting in this position defendant approached from the outside and stabbed his wife (deceased) from which she died in about half an hour. * * * We do not think there is anything in this objection."

Appellant cites us to the cases of Arnold v. State, 96 Tex. Cr. R. 214, 256 S. W. 919, and Music v. State, 121 S. W. (2d) 606, in support of his contention. We have read each of these cases, and they are readily distinguishable from the instant case.

In the Arnold case, supra, a witness, without being asked anything with reference to the defendant's reputation, stated: "He had the reputation of being the worst bootlegger in Washington County." He further said: "Yes, I know his reputation; it is bad." Of course, this was reversible error, and no one would question the correctness of the court's holding in that case.

In the case of Music v. State, supra, a deputy sheriff testified:

"I knew the house at No. 4323 Electra Street in Dallas. I knew Ray Music, Bill Garret and H. B. Huddleston. I saw them going in and out of this house on the nights of March 20 and 22d. I have seen them around that house together *and a number of other thieves.*"

The witness clearly intended to convey to the jury the opinion that the defendant was a thief and was associating with other thieves. This was clearly an expression of an opinion

as to appellant's character, and we take it that no one would question the correctness of the decision in that case.

Bills of Exception Nos. 2 and 3 may be considered and disposed of together inasmuch as each complains of the introduction of like or similar testimony. Bill No. 2 shows that the mother of the deceased was permitted to testify that Miss Winifred Woodier, at the time of this trial, was in New York; that the purpose of this testimony was to account for the absence of Miss Woodier. Appellant objected to this testimony on the ground that it was a conclusion, hearsay and prejudicial; that there was no claim that the defendant was in any way connected with her absence or in keeping her from attending court.

Bill No. 3 shows that Henry Feigle testified that he was an officer; that on the night in question he went to the scene of the homicide together with Officer Cooper; that Cooper arrested the defendant and not he (Feigle); that Cooper was absent because of having been injured in a wreck and as a result thereof was "laid up." Appellant objected to this testimony on the ground that he was not responsible for Cooper's absence; that the absence of Cooper should not be used against him; that the jury might draw the inference that if Cooper were present he would testify to something favorable to the State. In our opinion, there is no merit in either bill. It is true that there is evidence to the effect that Miss Woodier went with the deceased on the night in question to the cafe where the killing subsequently occurred, but the evidence also showed that the deceased had taken her home and had returned to the cafe alone. Hence it is obvious that she knew of no fact leading up to or which implicated appellant with the killing of the deceased and could not have affected the rights of appellant. The same is true of the testimony of Feigle relative to the absence of Cooper.

Appellant cites us to the cases of Askew v. State, 59 Tex. Cr. R. 152, 127 S. W. 1037, and Oliver v. State, 96 Tex. Cr. R. 633, as supporting his contention. The opinion of this court in the case of Askew v. State, supra, shows that while appellant was testifying in his own behalf and while he was being cross-examined by the District Attorney, the following facts were elicited from him: That on the night of the killing Arthur Lewis, Walter Lewis, All Williams, Bennie Edwards and Bias Jackson were all present at the "crap game" at the time of the

killing; that Arthur and Walter Lewis were cousins of the appellant; that none of the witnesses were present in court; that all of them testified for the State at the first trial but none of them had ever been present at any other term of court or had again testified; that appellant did not know where either of said witnesses were and had not tried to get them, locate them or take their depositions. This testimony clearly left the jury to draw the inference that the absent witnesses at the first trial had given testimony favorable to the State, and since then the appellant may have been instrumental in keeping them from appearing and testifying against him. That this was prejudicial to appellant cannot be denied. In the case of Oliver v. State, supra, the State, on cross-examination of appellant, asked him if on the night in question and immediately after the killing he did not run to a rooming house kept by Mrs. Ferris, engage a room and spend the rest of the night there. He admitted engaging the room and spending the night at the house. He was then asked if he did not tell Mrs. Ferris that he had just "gotten even" with a man who had beat him up. It was in evidence that at a carnival a short time before, appellant had been severely beaten and that he was not aware who his assailant was but thought it was the deceased. This he denied. In rebuttal the State was allowed to introduce a subpoena issued for Mrs. Ferris and served upon her the same day, and was also permitted to put a brother of Mrs. Ferris on the witness stand and prove by him that she was sick and unable to appear in court. Appellant's objection thereto was overruled. In disposing of the question the court said:

"The logical inference would be that she was wanted to prove that which appellant had denied, viz: that he did make said statement to her. * * * The State wishes to show to the jury that they had tried to get her without success, and also to put in testimony the reason why they could not produce her."

This clearly demonstrates that there is quite a difference between the facts of the cases cited and those of the instant case. In those two cases the prejudicial effect is quite obvious. However, there is another noticeable difference. In this case there is no evidence that Miss Woodier or Cooper had ever been summoned as witnesses, had ever testified at any of the previous trials; nor is there any intimation from any source that they or either of them knew of any fact or circumstance connected with the killing. Moreover, it was shown that Cooper had a wreck while riding a motorcycle, was injured and laid

up. Consequently, it is apparent that appellant had nothing to do with Cooper's absence. To hold under the circumstances here disclosed that the bills reflect reversible error would be straining the credulity of the most credulous to the breaking point.

By Bill of Exception No. 4 appellant complains because the State, on cross-examination, elicited from him the fact that in January, 1933, he was convicted in the Federal Court and sentenced to one year and one day in the Federal penitentiary. The ground of objection was that it was too remote. We are not in accord with his contention. The killing for which he was tried occurred in December, 1938, which was some five years after the conviction in the Federal Court. Appellant has not cited us to any case and we are not aware of any in which this court has held that a period of five or six years between the date of the conviction of a felony offense and the commission of another felony by the same party was too remote to be shown for the purpose of affecting the credibility of appellant as a witness. We believe that the cases of Shipp v. State, 104 Tex. Cr. R. 185, and Davis v. State, 52 Tex. Cr. R. 629, are decisive of the question here presented.

In his motion for a new trial, which is brought forward by a bill of exception, appellant asserts that Juror Aylor, while being examined as a prospective juror, misled him in this, that Aylor stated that he knew of no reason why he could not render a fair and impartial verdict, but did not disclose the fact that he had heard of the result of the former trial of the defendant. Appellant now contends that if the juror disclosed such fact he would have challenged him as he had not exhausted his peremptory challenges at that time. The bill further shows that the juror was not asked whether he had heard of the result of any former trial, while others were asked such question on their voir dire examination. Just why appellant failed to propound such interrogatory to the juror is not disclosed by the record. It occurs to us that if appellant had made such inquiry of the juror he would have disclosed that fact. Hence he cannot complain that the juror misled him when no such testimony was made relative thereto. See DeShazo v. State, 104 Tex. Cr. R. 511; McLain v. State, 117 Tex. Cr. R. 246; Russell v. State, 44 Tex. Cr. R. 465; DeArman v. State, 80 Tex. Cr. R. 147; Mills v. State, 34 S. W. 270.

We find no merit in appellant's complaint of the court's charge. It seems to be a very fair application of the law to the facts of the case.

Finding no reversible error in the record, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant insists that we were in error in our disposition of his complaint that the jury after their retirement to consider the case received information from one of the jurors that he had heard that appellant had been given the death penalty on a former trial at Galveston.

We have again examined the statement of facts upon the hearing of the motion for new trial upon this point. Obviously it would be impractical to set out in an opinion all of the testimony of each juror. We must be governed largely by the impression left upon our minds from the entire evidence upon the issue. Making application of the rule stated in Smith's case, (52 Tex. Cr. R. 344, 106 S. W. 1161) and copied in our original opinion, we are not impressed that a reversal should follow by reason of the incident complained of. The Smith case has been cited and the principle therein announced has been approved in many cases. See Scrivnor v. State, 121 Tex. Cr. R. 565, 50 S. W. (2d) 329; Graham v. State, 123 Tex. Cr. R. 121, 57 S. W. (2d) 850; Polanco v. State, 133 Tex. Cr. R. 7, 106 S. W. (2d) 1057; Wood v. State, 86 Tex. Cr. R. 550, 217 S. W. 1037. Some fifteen or twenty other cases cited in Shepard's Texas Criminal and Southwestern Reporter Citations will be found in which the holding in Smith's case is referred to. To review them would lengthen this opinion beyond pardonable length. Some of the cases were reversed because the fact of a former conviction was *discussed* and shown to have been considered by the jury; others were affirmed because the matter was only mentioned and was shown not to have been discussed. The distinction mentioned we regard as the turning point under the present record. The evidence of the jurors is all one way

to the effect that the statement about the former conviction and penalty assessed was not discussed or used in an effort to secure a change in any juror's view as to the penalty which should be inflicted. The fact that seven or eight jurors never even heard the matter mentioned is persuasive that the information was not utilized in argument to bring about a change in the attitude of any juror toward the punishment.

We have given appellant's motion the consideration to which it is entitled in a case carrying the extreme penalty. Believing the proper disposition was made of the case in our original opinion, the motion for rehearing is overruled.

UPON APPELLANT'S REQUEST FOR LEAVE TO FILE SECOND

MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The request is, in part, based upon the complaint that the court failed to pass upon the point that juror Aylor should be held to have been an unfair and prejudiced juror, and that he should have advised counsel for appellant on his voir dire examination that he had heard of the result of a former trial of appellant. We will consider only the matter mentioned as the other questions suggested in the motion have been fully discussed, and, we think, properly disposed of.

Upon examination of Mr. Aylor on voir dire he said that he had not from hearsay or otherwise formed or expressed any opinion that would influence him in reaching a verdict; that he did not know either appellant or deceased. He was not asked whether he had heard what the result of any former trial may have been. Information that there had been former trials was gotten before the jury legitimately during· the present trial. It developed upon hearing of the motion for new trial that Mr. Aylor had heard someone say that upon a former trial appellant had been given the death penalty. Notwithstanding the juror was asked no question upon his voir dire examination which would have revealed such information on the juror's part it is contended that the juror ought to have advised counsel for appellant of such information, and that in failing to do so he misled appellant and his counsel, and that a reversal should follow. Appellant relies upon Adams v. State, 92 Tex. Cr. R. 264, 243 S. W. 474, to support his proposition. Without discussion the Adams case has been followed in a

number of opinions which may be found by reference to Shepard's Reporter Citations and other citators as well. If any question had been asked the juror which would have naturally elicited a disclosure as to what he had heard, and he withheld the information it would have furnished some basis for the contention that he was an impartial juror. No. such inquiry was directed to said juror. We are asked to hold as a matter of law that because the juror had been told of the result of a former trial of appellant it characterized him as an unfair and prejudiced juror. He may have heard of the result, just as he might from hearsay have learned of some other facts, and yet be a perfectly fair and impartial juror notwithstanding his hearsay information.

After a most careful consideration of the matter we believe that if the Adams case (supra) and others go to the extent of supporting appellant's contention they go too far, and they are hereby modified to the extent here indicated. It appears to us that the opinions, both original and on rehearing in Wells v. State, 111 Tex. Cr. R. 21, 10 S. W. (2d) 991, announce the correct principle.

Appellant's second motion for rehearing is denied.