**William Gregory BOWERS,**
**Petitioner-Appellant,**

v.

**Donald BATTLES, Camp Supervisor, Harlan County Forestry Camp, Respondent-Appellee.**

No. 77–1017.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 19, 1977.
Decided Dec. 22, 1977.

William M. Radigan, Frankfort (Court appointed), for petitioner-appellant.

Robert F. Stephens, Atty. Gen. of Kentucky, William W. Pollard, Asst. Atty. Gen., Frankfort, for respondent-appellee.

Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This appeal from denial of the writ of habeas corpus concerns the adequacy of a retrospective hearing on the issue of the petitioner's mental competence to stand trial. On May 17, 1971 Bowers pled guilty to a charge of murder in the Fayette County, Kentucky, Circuit Court. On recommendation of the Commonwealth's Attorney he was sentenced to life imprisonment by a jury. He was represented by retained counsel prior to, and at the time of his plea. After a *pro se* attempt at postconviction relief had been denied Bowers filed a second motion to vacate judgment with the assistance of the public defender. An evidentiary hearing was held on March 14, 1975 by the state judge who had accepted the guilty plea, and the motion was denied in an order entered March 18, 1975. The

Supreme Court of Kentucky affirmed. *Bowers v. Commonwealth,* —— S.W.2d —— (Ky.1976).

The district court denied habeas corpus relief upon consideration of the entire record of the state proceedings. On appeal the respondent concedes "that there were sufficient grounds for doubting the appellant's competency to stand trial to make it incumbent upon the trial court to order a due process competency hearing." It is argued, however, that the evidentiary hearing held on March 14, 1975 cured this defect. The petitioner-appellant, on the other hand, contends that the evidence which the trial judge heard at the postconviction hearing raised sufficient doubt concerning his competence at the time of his plea to require that the conviction be set aside.

Petitioner had a history of emotional problems and had been under the care of a psychiatrist several times between April 1968 and January 1970. The homicide which led to the charge against Bowers occurred on October 30, 1970. On November 9, 1970 the psychiatrist who had previously treated petitioner visited him in jail. This visit was arranged by petitioner's attorney who also requested the court to order an examination for the purpose of determining whether petitioner was competent to stand trial. In response to this motion the petitioner was sent to a state mental hospital for examination and evaluation. In a report to the committing court a psychologist at the state hospital who examined petitioner wrote, "Although Mr. Bowers is limited intellectually, he is capable of understanding the charges against him and of following the proceedings of a trial." The psychiatrist who discharged petitioner from the hospital for return to the court found that he was competent and could face his charges and stand trial. This report was made in January 1971.

A short time before the scheduled trial date in May 1971 petitioner was again interviewed in jail by his psychiatrist, Dr. Knepper, and his attorney. The psychiatrist and an associated psychologist then wrote a report in which they recited their belief that petitioner had experienced emotional and mental problems from early childhood and that he was still suffering from them. Describing petitioner's condition as "schizo-affective reaction," they recommended that he be "institutionalized or incarcerated for public safety and his own" and stressed the need for vocational rehabilitation. This report did not address the question of whether petitioner was able to comprehend court proceedings or assist in the conduct of his defense. The prosecuting attorney read this report to the jury after the guilty plea had been received to support his recommendation of life imprisonment rather than death, the other punishment then possible for willful murder in Kentucky.

At the March 1975 hearing Dr. Knepper testified concerning the petitioner's history of emotional problems and related his periods of erratic and irresponsible behavior to excessive use of alcohol. She again stressed the need for vocational rehabilitation. The witness testified that petitioner suffered from no organic brain disorder and diagnosed his condition as schizo-affective with paranoidal tendencies. Referring to her examination of petitioner in May 1971, the witness was asked whether or not she felt petitioner "was able to aid and assist his attorney in the defense of his case on May 17, 1971 . . . ." She answered, "I think he probably was by that time. He had been in a protected environment." This inquiry and answer followed testimony by the witness that shortly after his arrest the petitioner did not appear to comprehend the seriousness of his situation. Dr. Knepper further testified when she saw Bowers in May 1971 he realized that if he pled guilty he would receive either a life sentence or the death penalty.

The deposition of petitioner's former retained counsel was then read. The witness stated that he believed the best possible defense for petitioner was a plea of insanity and that he had worked toward establishing the basis for such a plea from the time he was employed. He testified to numerous meetings with Bowers and stated that he

**4**

went to Dr. Knepper's office on at least three occasions to discuss the Bowers case. He had a total of eight or nine conversations with Dr. Knepper and twice took her to the jail for meetings with petitioner. At Dr. Knepper's suggestion he arranged to have petitioner removed to a Lexington hospital for an electroencephalogram to determine if there was organic brain damage. The witness stated that he concluded that the evidence of insanity was not strong enough to risk a trial and, consequently, he entered into plea bargaining which resulted in the guilty plea with a recommendation of life imprisonment. The prosecution declined to consider a reduced charge of manslaughter with a recommendation of twenty-one years. The witness further testified that he and Dr. Knepper discussed the decision to enter a guilty plea with Bowers at the jail the day before the trial. He again went over a form used in guilty plea cases with petitioner the next morning and felt that he understood what he was doing.

The former Commonwealth's Attorney who had approved the plea bargain and made the recommendation to the jury testified that nothing at the May 1971 proceedings during which petitioner pled guilty indicated to him that Bowers was not competent to stand trial. This witness, who is now a state court judge, testified that petitioner appeared to understand the proceedings and that his answers to the court's questions all indicated that he was "perfectly competent."

In denying the motion to vacate judgment the trial judge recalled petitioner's responses and demeanor when the guilty plea was taken. It was the court's conclusion that on the day of the plea petitioner had the mental capacity "to completely understand the nature of the charges against him, to assist the attorneys, and to understand the nature and consequences of his act."

■ In *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court adopted language suggested by the Solicitor General in defining competence to stand trial: "The test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." It is obvious that this is a determination which can best be made at the time of trial. On at least three occasions the Supreme Court has referred to the difficulties of retrospective determinations. See *Dusky v. United States, supra* at 403, 80 S.Ct. 788; *Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Drope v. Missouri*, 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Nevertheless this circuit as well as others has found retrospective determinations of competence to stand trial adequate in particular cases. *Conner v. Wingo*, 429 F.2d 630 (6th Cir. 1970), *cert. denied*, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 121 (1972); *Miranda v. United States*, 458 F.2d 1179 (2d Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972); *United States v. Makris*, 535 F.2d 899 (5th Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977); *Barefield v. New Mexico*, 434 F.2d 307 (10th Cir. 1970), *cert. denied*, 401 U.S. 959, 91 S.Ct. 969, 28 L.Ed.2d 244 (1971). *Cf. United States ex rel. McGough v. Hewitt*, 528 F.2d 339 (3d Cir. 1975). The critical question is whether the evidence relied upon for determining a defendant's competence at an earlier time of trial "was evidence derived from knowledge *contemporaneous to trial*." *Conner v. Wingo, supra*, 429 F.2d at 637. (emphasis in original).

At the postconviction hearing in *Conner* there was testimony from a psychiatrist who had attended the original trial and observed the defendant's conduct there. He testified that he saw nothing there which changed his earlier opinion that the defendant was competent to stand trial. Court-appointed counsel at the original trial testified that Conner knew the charges against him and actively participated in the defense. There are many factual similarities between *Conner* and the present case. Here the psychiatrist who testified at the postconviction proceedings based her opin-

ions, in part, on the jail interview a few days before the guilty plea was received. Both the retained counsel for Bowers and the prosecuting attorney related their testimony to his appearance and participation in the plea-taking proceedings. In addition, the trial judge referred to his impressions at the time of the guilty plea.

The records of the two cases also disclose differences. Here a guilty plea was involved, whereas Conner stood trial, thus affording a greater opportunity for the other participants to observe his demeanor. This factor is not decisive, however, if the evidence received retrospectively is based on contemporaneous observations. *Cf. Miranda v. United States, supra.* The evidence of irrational behavior by the defendant between the time of the offense and the trial was greater in *Conner* than in the present case. Conner had a 20-year history of hospitalization for mental problems, and he attempted suicide while awaiting trial. Bowers had seen a psychiatrist "on and off" for three years and had been hospitalized briefly one time. Though Dr. Knepper referred to Bowers' paranoidal tendencies, the evidence in the present case disclosed no such bizarre behavior as that which the Supreme Court considered in *Pate v. Robinson* and *Drope v. Missouri.*

■ The burden of proof was on the petitioner at the state postconviction hearing and in the habeas corpus proceedings. *Conner, supra,* 429 F.2d at 637; *Bruce v. Estelle,* 536 F.2d 1051, 1058 (5th Cir. 1976). We have carefully examined the evidence produced at the postconviction hearing and have considered the inferences to be drawn from it in determining that petitioner was not denied due process. The only professional opinion available to the court at the time the plea was received was that of the state hospital psychiatrist who stated that Bowers had no psychosis and was competent to stand trial. Though the letter from Dr. Knepper and her associate related a long history of mental problems, it emphasized the necessity that petitioner be institutionalized and given vocational rehabilitation. When this witness testified at the

March 1975 hearing she again dwelt on petitioner's history of mental and emotional problems and need for rehabilitation. Though she found him unresponsive and seemingly unaware of the seriousness of his situation shortly after his arrest, the witness testified that by the time of the trial Bowers was probably able to assist his counsel in the defense of his case. She further stated that the petitioner knew the probable consequences of his guilty plea. This testimony, when considered in conjunction with that of the prosecuting attorney and petitioner's retained counsel, supports the finding of the trial judge that the petitioner was competent to stand trial, and to enter a guilty plea, on May 17, 1971.

■ The petitioner also contends he was denied effective assistance of counsel. We find no support for this claim. Immediately after being employed to represent petitioner, Graddy Johnson arranged for Dr. Knepper to interview Bowers in jail. Johnson was responsible for obtaining the order committing petitioner to a state mental hospital for examination and evaluation. He was aware of the possibility of an insanity defense and continued to try to develop such a defense until a few days before the scheduled trial date. It was only after his May 1975 visit with petitioner at the jail in company with Dr. Knepper that Johnson concluded the risk of going forward with a trial was too great. He felt the insanity defense was not strong enough and decided to initiate plea bargaining to eliminate the possibility of a death sentence. Johnson did not reach this conclusion alone; he consulted another attorney who had accompanied him on most of his visits to Dr. Knepper. Moreover, Dr. Knepper was present when petitioner agreed to plead guilty and accept a life sentence, and she took part in the discussions concerning the options which were available.

■ The failure of Johnson to move for an evidentiary hearing on the issue of competence to stand trial on May 17, 1971 was not a denial of effective assistance of counsel. He had fully investigated the only defense which appeared possible. Though

he knew that Bowers was mentally disturbed he was able to discuss strategy with him and felt that Bowers understood the proceedings. The psychiatrist who had treated Bowers for three years never advised Johnson that Bowers was not competent to stand trial. The only psychiatrist who ever gave an opinion on that question stated that he was competent.

The judgment of the district court is affirmed.