Thelette BRANDON, Appellant,

v.

The STATE of Texas, Appellee.

No. 59348.

Court of Criminal Appeals of Texas,
En Banc.

April 25, 1979.

Rehearing En Banc Denied June 13, 1979.

Opinion on Appeal after Abatement
May 21, 1980.

Second Motion for Rehearing Denied
June 11, 1980.

Jerry P. Campbell, court appointed, R. Scott Moran, court appointed, Waco, for appellant.

Felipe Reyna, Dist. Atty. and Lynn Malone, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for capital murder. The punishment is death.

The appellant makes no contention that the evidence is insufficient to support the jury's verdict on the trial on the merits. The appellant while in a bus station in Waco stabbed and killed a man. As the appellant was fleeing from the scene of the stabbing Sgt. Roger Barrett, a Waco police officer, attempted to stop the appellant. In the struggle which resulted the appellant stabbed Barrett and shot him with the officer's own revolver. Barrett died as a result of the injuries inflicted by the appellant. The appellant was convicted for killing Bar-

rett, who it was alleged appellant knew was a peace officer acting in the lawful discharge of his duties. The appellant's sole defense on the trial on the merits was insanity.

Before the trial on the merits appellant's counsel filed a motion alleging that the appellant was not competent to stand trial. The motion was supported by the report of a psychiatrist which stated that appellant was not presently competent to stand trial. The motion was granted; a jury was selected to hear the competency issue only, and both the appellant and the State offered extensive testimony and evidence concerning the appellant's competency. The jury in resolving the issue found the appellant competent to stand trial.

The record on appeal includes all of the competency proceedings. This Court has recently held that it will review the proceedings on competency when such matter is raised in an appeal from the judgment after the trial on the merits. *Jackson v. State*, 548 S.W.2d 685 (Tex.Cr.App. 1977). Appellant asserts that in the competency proceedings he was denied his constitutional right to due process of law, and therefore there was not a lawful determination that he was competent to stand trial before he was forced to trial on the merits. Specifically the appellant complains of improper jury argument by the prosecutor, and also asserts that he used all of his peremptory strikes and was then forced to accept an objectionable juror after it had been necessary to use a peremptory strike on a prejudiced juror who should have been excused for cause. The appellant also complains that the trial court improperly restricted voir dire examination of the jury panel and misstated the law in instructing the jury.

We first discuss appellant's contention that the prosecutor made misstatements of law and other prejudicial comments during jury argument at the competency trial.

In his closing argument at appellant's competency trial the prosecutor made the following statement to the jury:

"Now, Mr. Moran said, well, if you find him competent, he is going to a maximum

security hospital, a hospital for the criminally insane, and their own witness, Dr. Holbrook, the State's witness, testified to that. Well, that's quite true, Ladies and Gentlemen. If you find this man incompetent—if you find this man incompetent, he will go to Rusk State Hospital. And do you know how long they can keep him? They can keep him for up to one year, and they have to send him back, at that time. They have to, regardless of what his condition is. And he has to be civilly committed, that means they put him in a civil hospital, the hospital down at Austin, Texas, that you read about people walking away from all of the time. That's right. That's right. That's how long he will be in maximum security."

Appellant objected to the comment; his objection was sustained, and the jury was instructed to disregard the comment.

The following discussion then took place:

"MR. MALONE: Well, Ladies and Gentlemen, you use your common sense. Whatever he has got today, he had the date of this offense, and if he's incompetent, yeah, someday he will be set free without being tried for this offense, I can promise you that.

"MR. MORAN: We'll object to that.

"MR. CAMPBELL: Your Honor, that is a misstatement of the law.

"MR. MALONE: Well, Your Honor, that's what Mr. Moran said, he said it would never happen. He said the man would never go free without being tried.

"THE COURT: I'm going to overrule that objection.

"MR. MALONE: You ought to keep that in mind. That's all I ask you to do, is use you common sense."

Later in his closing argument the prosecutor made reference to the previous testimony of William Upshaw, a McLennan County Jail inmate, concerning a conversation which Upshaw had with appellant while in jail:

"And William asked Thelette, said, 'What are you in here for?' And he said, well, I killed a 'swine'. That's not the language he used, but that's what it meant, I killed a 'swine'. And, of course, a 'swine' is a 'pig'. And he said, well, who did you kill? And he said 'a Waco pig'."

Still later the prosecutor stated:

"MR. MATKIN: But you can see from the records of the jail that reflect that there were other times when [appellant] wanted to see a lawyer and wanted to talk to his lawyers. [Defense Counsel] Campbell said they went up there on other occasions, but they really didn't try to go into it. And I submit to you, the reason for that is because they knew they had found their defense in this case, they knew that competency was their best hope of beating this thing.

"MR. CAMPBELL: We will object to that, Your Honor. Competency can in no way be used to beat a rap, so to speak.

"MR. MALONE: If it please the Court—

"THE COURT: Overrule the objection.

"MR. MATKIN: And that's the way they were going. Sure, they had Thelette sign some authorizations to get his records. Sure, they had him do that, but he is incompetent. They never talked to him about the case, they never asked him about the case very much after that, and I believe that's why they didn't go into it that much."

Appellant urges that the comment that he would be set free if found incompetent, combined with the other comments, "infected the whole decision-making process" of the hearing and "irreparably tainted" the determination of his competency to stand trial.

The State's sole response to appellant's contention is that appellant's ground of error is multifarious and not subject to review because it "presents a jumble of items of both argument and testimony, to some of which objection was made, and in other cases, not." Appellant refers to more than one comment by the prosecutor, but his ground of error is intelligibly written, and his arguments can be clearly understood. Art. 40.09, Sec. 9, V.A.C.C.P.

We agree with appellant that these statements made before the competency jury, taken as a whole, were highly prejudicial and misleading.

The prosecutor's comment that appellant would go free if found incompetent was a clear misstatement of the law. Nowhere does Art. 46.02, V.A.C.C.P., which deals with incompetency to stand trial, provide that upon a finding of incompetency the defendant must be released, as the prosecutor implied in his comment. A defendant can only be discharged by order of the trial court, and the court always has the alternative to order commitment proceedings. Nor is it necessarily true that appellant would never be tried for the offense. There is not statute of limitations on murder, and the prosecuting attorney must be notified before a defendant's release from civil commitment, if the prosecuting attorney has properly notified the head of the committing facility. Thus the State has the opportunity to prosecute the defendant again. This comment was harmful to appellant because it implied to the jurors that if they found appellant incompetent he would never go to trial and would inevitably be released. The prosecuting attorney made further improper remarks by personally "promising" the jurors such a result, and by remarking that if found incompetent appellant would eventually be sent to the Austin State Hospital, from which patients routinely "walk away."

The argument here is similar to that made in *Bruce v. Estelle*, 483 F.2d 1031 (5th Cir. 1973). There, in "rhetoric reminiscent of a television drama," the prosecutor stated:

"I suggest right now he's [Bruce] thinking, he knows that they have already said he was sane in '64 already said sane now, you find him insane at the time of his trial, *he goes free.* That's what he knows, because you can't incarcerate in a mental hospital a sane man. *I think he knows that he can't be tried again.* I think he knows the memories have faded and the evidence has dissipated in the intervening four years.

"That's what I think he knows. It's a very clever attempt to put something over on you as jurors to where he gets out of prison after having done life, [sic] been given a life sentence in Dallas County for the crime of murder with malice.

"This is your county. You can do what you want to. You're the arbiters of what goes on in this county. *If you want him walking the streets of your county, you go ahead and let him out; find him insane at the time of his trial and you will have effectively let him out of prison.* That's what you are facing in your decision in this trial." [Emphasis added]

The Court in *Bruce* strongly condemned the prosecutor's argument, declaring that:

"Such emotional, erroneous and prejudicial comments have no place in a dispassionate resolution of the question whether Bruce was competent in 1965 to stand trial.

"These comments most probably infected the whole decision-making process of the jury. State counsel knew that Bruce could be retried and his assertion to the jury that he could not was erroneous. Such irrelevant diatribes cannot be countenanced."

The *Bruce* court concluded that this type of argument jeopardizes the deliberative processes of the jury and infringes on the accused's right to a fair hearing. See also *Martin v. Estelle*, 546 F.2d 177 (5th Cir. 1977), where the prosecutor argued that the defendant would be "back on the streets" if found incompetent. In this case, as in those cases, the State's comments were so inflammatory and misleading that it prevented a fair determination of appellant's competency.

The prosecutor's latter two comments concerning Upshaw's testimony and defense counsel's "best hope of beating this thing" were also highly prejudicial to appellant. Upshaw's testimony that while in jail appellant told him he had killed a "swine," a "Waco pig," constituted evidence that appellant murdered Officer Barrett. It directly related to appellant's guilt or innocence of the crime with which he was

charged. Whatever probative value the testimony had regarding appellant's mental competence was outweighed by the prejudice which it undoubtedly invoked in the jurors' minds. The prosecutor's nearly verbatim reiteration of Upshaw's testimony during closing argument further impressed this improper testimony on the jury. The "best hope" remark implied that appellant was in fact guilty and that the appellant was using the competency hearing solely as a defense to the trial on the merits.

■ It has been long established in Texas that a defendant's competency must be determined in a hearing separate from the trial on the merits. See Art. 46.02, V.A.C. C.P.; *Townsend v. State*, 427 S.W.2d 55 (Tex.Cr.App. 1968); *Guagando v. State*, 41 Tex. 626 (Tex. 1874). The guilt or innocence of the defendant is not at issue in such a hearing, and it is improper to introduce evidence of the offense itself. *Ex parte Hagans*, 558 S.W.2d 457 (Tex.Cr.App. 1977); *Townsend v. State*, supra. Otherwise, the issue which the jury is to determine becomes confused, and the jury is exposed to facts which unduly prejudice it against finding the defendant incompetent. As we stated in *Ex parte Hagans*, supra:

"Such separate uncluttered hearing before a jury makes it easier to determine fairly the issue of competency without introducing facts which might tend to cloud the issue at hand, 'facts which alone might well so stir the minds of the jury as to make difficult the exercise of calm judgment upon the question of present [incompetency],' *Ramirez v. State*, 92 Tex.Cr.R. 38, 241 S.W. 1020, 1021 (1922)."

See *Townsend v. State*, supra; *Martin v. Estelle*, supra.

■ The latter two comments of the prosecutor, combined with Upshaw's testimony, improperly exposed the jury to prejudicial facts concerning the offense, and implied that the competency issue was only a defense to the trial on the merits rather than a separate and distinct proceeding. As a result, they vitiated the jury's verdict that appellant was competent.

■ During the voir dire of the jury for the competency trial, a prospective juror on the panel said that his brother-in-law worked with the homicide division of the Waco Police Department. Because of this the venireman said that he had a bias and prejudice against the accused. He said he would honestly try but he could not remove this bias and prejudice from his mind. The State and the court interrogated the venireman in an attempt to rehabilitate him and were partially successful, but it is to be remembered that a venireman who has expressed bias and prejudice against an accused, or even in a civil proceeding against a party, can almost never be rehabilitated— the prospective juror should be excused for cause as a matter of law. *Williams v. State*, 565 S.W.2d 63 (Tex.Cr.App. 1978); *Gonzalez v. State*, 169 Tex.Cr.R. 49, 331 S.W.2d 748 (1960); *State v. Burke*, 434 S.W.2d 240 (Tex.Civ.App.—Waco, n. w. h. 1968). The error here was well preserved in the manner required by *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr.App. 1978) (Opinion on Appellant's Second Motion for Rehearing); *Wolfe v. State*, 147 Tex.Cr.R. 62, 178 S.W.2d 274 (Tex.Cr.App. 1944), and error is shown.

■ The appellant's complaint concerning the restriction of jury voir dire is also well taken; although the issue in the proceeding was whether the appellant was competent to stand trial, in the circumstances presented in this record the trial court should have permitted a limited interrogation to determine first whether the prospective jurors had an opinion of the appellant's guilt or innocence of the criminal charge, and second whether that would influence their verdict in the competency trial. Such interrogation was necessary for the appellant to intelligently exercise peremptory challenges as well as challenges for cause. See *Mathis v. State*, 576 S.W.2d 835 (Tex.Cr.App. 1979); *Mathis v. State*, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959); *Belcher v. State*, 96 Tex.Cr.R. 382, 257 S.W. 1097 (1924).

■ The appellant also contends that the jury instructions were confusing and re-

quired of him a greater burden of proof than required by law. The court submitted to the jury an abstract definition as follows:

"Our law provides that a person is deemed incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or a rational as well as factual understanding of the proceedings against him."

This definition is worded in the disjunctive and the appellant says it should have been worded in the conjunctive. As an abstract statement of law the statement should be in the conjunctive. The definition was not specifically applied to the appellant in this case, but since at the time of trial there was no objection to the charge it was not reversible error to submit the charge as it was submitted. The court in submitting such a charge should when stating the abstract proposition of law state it in the conjunctive, but when the law is specifically applied to the accused it should be stated in the disjunctive.

■ We conclude from the record for the reasons stated that appellant was denied due process because he did not receive a fair hearing on his competency to stand trial. Therefore, we must reverse the judgment that appellant was competent to stand trial. We remand the cause to the trial court to empanel a jury and hold a trial to retrospectively determine appellant's competency to stand trial.

This Court is fully aware of the difficulties inherent in making a retrospective determination of a defendant's competency. The United States Supreme Court has stressed these difficulties in its decisions.

There is, however, ample authority that the requirements of due process may be fully met as it concerns the appellant here if he were now granted a trial to determine, after the fact, whether he was competent at the time he was tried and convicted. See e. g. *Martin v. Estelle*, 546 F.2d 177 (5th Cir. 1977); *Bruce v. Estelle*, 483 F.2d 1031 (5th Cir. 1973); *United States v. Makris*, 535 F.2d 899 (5th Cir. 1976), cert. denied 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803

(1977); *Lee v. Alabama*, 406 F.2d 466 (5th Cir. 1969), cert. denied 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1969); *Barefield v. New Mexico*, 434 F.2d 307 (10th Cir. 1970); *Crail v. United States*, 430 F.2d 459 (10th Cir. 1970); *Bowers v. Battles*, 568 F.2d 1 (6th Cir. 1977); *Conner v. Wingo*, 429 F.2d 630 (6th Cir. 1970); *Harkins v. Wyrick*, 552 F.2d 1308 (8th Cir. 1977); *Rose v. United States*, 513 F.2d 1251 (8th Cir. 1975); *Saddler v. United States*, 531 F.2d 83 (2d Cir. 1976); *United States ex rel. Suggs v. La-Valle*, 523 F.2d 539 (2d Cir. 1975); *Miranda v. United States*, 458 F.2d 1179 (2d Cir. 1972), cert. denied 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972); *United States ex rel. McGough v. Hewitt*, 528 F.2d 339 (3d Cir. 1975); *Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973). State cases include *People v. Ranes*, 63 Mich.App. 498, 234 N.W.2d 673 (1975); *People v. Anderson*, 53 Mich.App. 60, 218 N.W.2d 412 (Ct.App. 1974); *People v. Hudson*, 19 N.Y.2d 137, 278 N.Y.S.2d 593, 225 N.E.2d 193, (1967), cert. denied 398 U.S. 944, 90 S.Ct. 1852, 26 L.Ed.2d 281 (1970); *Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974); *State v. Latif*, 134 N.J.Super. 441, 341 A.2d 678 (1975); *State v. Carroll*, 543 S.W.2d 48 (Mo.Ct.App. 1976).

■ *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), do not necessarily prohibit retroactive determination of the competency of the accused, but do spell out some of the difficulties involved in making such determinations and hold that under the particular facts in those cases such determination was not feasible. Some of these difficulties include passage of time, present recollection of expert witnesses who testified at the original hearing, and ability of the judge and jury to observe the subject of their inquiry. *Pate v. Robinson*, supra. Retrospective determinations are possible depending upon the facts of each case and the quality and quantity of evidence available. See *United States v. Makris*, supra. The length of the time after trial in which it has

been held feasible to determine whether a defendant was competent when he was tried ranges up to twenty-four years. See *Lee v. Alabama,* supra. In any event, passage of time is only one factor to be considered. See *Barefield v. New Mexico,* supra; *Carroll v. Beto,* 330 F.Supp. 71 (N.D. Tex. 1971), affirmed 446 F.2d 648 (5th Cir. 1971) (meaningful hearing possible twenty-three years after trial).

In view of our disposition of this appeal and in the event that another jury finds that the appellant was competent when he was tried in October, 1976, we have fully reviewed the trial on the merits and have carefully considered each ground of error raised by appellant's counsel who are to be commended for their able and thoroughly lawyer-like defense of their unfortunate client.

Appellant asserts that the trial court erred in hearing and considering pretrial motions concerned with the trial on the merits before it determined appellant's competency to stand trial. He argues that if the trial court determines a competency hearing is required, Art. 46.02(2)(a), V.A.C.C.P. requires that the issue of competency to stand trial "shall be determined in advance of the trial on the merits." Appellant says that this provision of the statute is mandatory and that pretrial motions are an "integral part" of the trial on the merits; thus the trial court violated the statute by holding a pretrial hearing to deal with the pretrial motions before holding a competency hearing. Although we are inclined to reject this argument as being without merit on its face, we need not deal with the merits of appellant's contention in the circumstances presented.

■ Appellant filed his motion for a hearing on competency to stand trial on August 27; the motion was granted and the competency hearing was set for October 13. On the morning of the pretrial hearing previously set for October 7, appellant filed a motion to abate the proceedings until after the competency hearing. At that time several witnesses were present under subpoena to testify on appellant's change of venue

motion. To postpone the hearing would have caused undue delay and inconvenience to these witnesses, both parties, and the trial court. Appellant could and should have filed his motion to delay consideration of pretrial motions along with his motion for a competency hearing on August 27. As it was, his motion was not timely filed and came as a complete surprise to the court. Furthermore, although appellant asserts that he was harmed by the court's action in denying his motion and considering the pretrial matters, he produces no evidence whatsoever of any harm suffered, and we can find none in the record. No error is shown.

At the pretrial hearing on October 7, appellant's motion for a change of venue was heard and denied. Appellant had properly filed affidavits of two compurgators in support of his motion. At the hearing appellant called eight witnesses and introduced documentary evidence in support of his motion, then rested his case and requested the trial court to consider two additional compurgator affidavits which he had not previously filed. The State objected; the trial court sustained its objection but allowed appellant to seal the affidavits and include them in the record for purposes of appeal. Appellant contends that the trial court abused its discretion in refusing to consider the two sealed affidavits and that the court's refusal evidences a predisposition on its part in favor of the State.

■ Given conflicting evidence, a change of venue is at the trial court's discretion. *Von Byrd v. State,* 569 S.W.2d 883 (Tex.Cr.App. 1978); *Freeman v. State,* 556 S.W.2d 287 (Tex.Cr.App. 1977); *Ransonnette v. State,* 522 S.W.2d 509 (Tex.Cr.App. 1975), cert. denied 423 U.S. 941, 96 S.Ct. 350, 46 L.Ed.2d 274 (1975). Here, appellant's motion was properly supported by two compurgator affidavits, and appellant called eight witnesses and introduced documentary evidence. Combined with the State's controverting affidavits and two witnesses, this evidence was sufficient to enable the trial court to make a fair and informed ruling on appellant's motion with-

out the two additional affidavits. Also, the record indicates that the trial court refused to consider the additional affidavits not because it was prejudiced in favor of the State, but because it was concerned that the State would also want to file additional affidavits, and it did not wish to delay the proceedings. In light of these facts, the trial court did not abuse its discretion in refusing to consider the additional affidavits offered by appellant.

In four grounds of error appellant charges that the trial court sustained the State's challenge for cause of four veniremen who expressed only general scruples against the death penalty, in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). A close examination of the record reveals that all four veniremen could not vote the death penalty in any circumstances.

Venireman C.W. Russell stated that nothing anyone could say would make him change his mind, that "I don't know of anything that could make me agree to the death penalty," and that in participating, "I think I would be a part of premeditated murder." When asked whether the knowledge that a "Yes" answer to the special issues of Art. 37.071, V.A.C.C.P. meant the death penalty would be assessed would affect his answers to those special issues, Russell answered in the affirmative.

Venireman Archie Adams testified that he held a life-long Christian conviction that would not allow him to take life. He stated that he could not be a party to imposing the death sentence *no matter how bad the facts were*, and remained adamant about this even after the procedure under Art. 37.071, supra, was explained to him in detail. Further, appellant waived his error regarding Adams by failing to object to Adams' dismissal for cause. See *Shippy v. State*, 556 S.W.2d 246 (Tex.Cr.App. 1977), cert. denied 434 U.S. 935, 98 S.Ct. 422, 34 L.Ed.2d 294 (1977); *Boulware v. State*, 542 S.W.2d 677 (Tex.Cr.App. 1976), cert. denied 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977).

Venire member Mrs. Jack Venner testified that regardless of the facts she could not consider the death penalty and would automatically exclude it from consideration, and that she could not answer the Art. 37.071 special issues in the affirmative knowing that the death penalty would result.

Venireman L.B. Belcher testified that he did not believe in capital punishment, and after he was posed an extreme hypothetical fact situation involving the abuse and killing of a child still maintained that he would automatically vote for life imprisonment over the death penalty.

This Court has held that *Witherspoon*, supra, does not require specific formalized answers. *Villarreal v. State*, 576 S.W.2d 51 (Tex.Cr.App. 1978); *White v. State*, 543 S.W.2d 104 (Tex.Cr.App. 1976); *Tezeno v. State*, 484 S.W.2d 374 (Tex.Cr. App. 1972). The testimony of each of these jurors reflects an unwavering and unambiguous bias against the death penalty and a clearly expressed inability to follow any procedure which would result in the imposition of that penalty. Each venireman was thoroughly examined by counsel for both the appellant and the State. We hold that *Witherspoon* was not violated and that the trial court did not err in excusing these veniremen for cause. Compare *Freeman v. State*, supra; *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App. 1976), cert. denied 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App. 1976).

Appellant relied on the defense of insanity at his trial; two psychiatrists and two psychologists were called to testify that he was legally insane at the time of the offense. In rebuttal, the State called Drs. James Grigson and John Holbrook to testify that, based on their examinations of appellant in McLennan County Jail, they were of the opinion that appellant was sane at the time of the offense. Appellant contends that the prosecution psychiatrists were allowed to testify concerning his sanity in violation of his privilege against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States and Art. I, Sec. 10 of the

Constitution of this State. He asserts that prior to the psychiatric examinations of Drs. Grigson and Holbrook he was entitled to be warned that what he said could be used against him and that he had the right to request an examination by disinterested experts.

Recently we held that a psychiatrist's testimony concerning his examinations of the defendant does not violate the privilege against self-incrimination where the psychiatrist did not reveal "any fact or communication between him and the appellant showing that appellant committed a crime of any nature." *Shippy v. State*, supra, quoting *Granviel v. State*, supra. And in *Stultz v. State*, 500 S.W.2d 853 (Tex.Cr.App. 1973), we stated:

"A psychiatric examination is not an adversary proceeding. Its purpose is not to aid in the establishment of facts showing that an accused committed certain acts constituting a crime; rather, its sole purpose is to enable an expert to form an opinion as to an accused's mental capacity to form a criminal intent."

In this case no statements relating to the commission of any crime were admitted; the testimony of Drs. Grigson and Holbrook involved only descriptions of psychological tests administered to appellant, appellant's responses to test questions, and evaluations of appellant's responses and actions during the examinations. The prosecuting attorney was careful to limit the doctors' testimony to those subjects, and the testimony went only to the sanity of appellant at the time of the offense. This testimony did not violate appellant's privilege against self-incrimination. See *United States v. Williams*, 456 F.2d 217 (5th Cir. 1972); *United States v. Greene*, 497 F.2d 1068, 1081 (7th Cir. 1974), and other cases there cited.

In a related ground of error appellant contends that the testimony of Drs. Grigson and Holbrook is inadmissible because they examined him in violation of the provisions of Art. 46.02 and Art. 46.03, V.A.C.C.P. Appellant urges that Drs. Grigson and Holbrook were not appointed by the trial court and that there was no showing that they

were disinterested, had been instructed by the trial court, or had followed the procedures required by the statute in filing their reports and evaluations. The record reflects that both appellant's counsel and the State employed their own psychiatrists to examine appellant; no psychiatrist was appointed by the trial court.

Appellant's position appears to be that Art. 46.02, supra and Art. 46.03, supra, provide the exclusive procedure by which a defendant can be examined as to his sanity. We answered that contention in the negative in *Patterson v. State*, 509 S.W.2d 857 (Tex.Cr.App. 1974). In *Patterson* the defendant's counsel called a psychologist at the trial on the merits to testify that the crime committed would be out of character for the defendant's personality type. The State rebutted by calling Dr. Grigson to testify that persons of the defendant's personality type would commit the sort of crime with which the defendant was charged.

We held that Art. 46.02(2)(f)(1), V.A.C.C.P. did not provide the exclusive procedure for examining the defendant, and consequently the State's rebuttal testimony was proper even though Dr. Grigson was not court-appointed and had examined the defendant solely at the State's request. Similarly, in this case appellant was entitled to call his own expert witnesses to testify that he was insane at the time of the commission of the offense and the State was entitled to rebut that testimony with its own expert witnesses. These witnesses need not be court-appointed and are not subject to the above-mentioned specific provisions of Art. 46.02, supra, and Art. 46.03, supra, that court-appointed psychiatrists are subject to. No error is shown.

Appellant urges in three related grounds of error that the trial court erred in refusing to grant an instructed verdict and a motion for new trial, and in overruling his objection to the court's charge, because the State failed to prove that appellant caused the death of Waco Police Officer Roger Barrett by shooting him with a gun. The indictment alleges that appellant murdered

Barrett both "by stabbing and cutting him with a knife and by shooting him with a gun." The evidence presented showed that Barrett was both stabbed and shot, but there was expert testimony that his death was actually caused by the knife wounds. The trial court charged the jury only on the theory that Barrett's death was caused by cutting and stabbing with a knife.

█ It is proper to allege alternative means by which a murder is committed. *Dovalina v. State*, 564 S.W.2d 378 (Tex.Cr. App. 1978); *Anderson v. State*, 479 S.W.2d 57 (Tex.Cr.App. 1972); *Burt v. State*, 38 Tex.Cr.R. 397, 40 S.W. 1000 (1897). It is only necessary to prove one of the means by which the murder was committed, *Dovalina v. State*, supra; *Garcia v. State*, 537 S.W.2d 930 (Tex.Cr.App. 1976); *Medina v. State*, 49 S.W. 380 (Tex.Cr.App. 1899), and it is proper to charge only on the means which is supported by the evidence. *Dovalina v. State*, supra; *McElroy v. State*, 528 S.W.2d 831 (Tex.Cr.App. 1975); *Provost v. State*, 514 S.W.2d 269 (Tex.Cr.App. 1974). These grounds of error are overruled.

Finally, appellant asserts that he should have been granted a new trial because of juror misconduct and prejudice. He says that Harvey McMurry, a minister in Waco, "knowingly and intentionally misled and misinformed counsel for appellant during his voir dire by failing to disclose facts within his knowledge relevant to the determination of his impartiality as a juror." Consequently, appellant was deprived of his right to "intelligently exercise his peremptory challenges." In response to appellant's inquiries during voir dire, McMurry stated that he did not know any police officers in Waco, and that he had met Mrs. Roger Barrett at a garage sale a week before Officer Barrett's death, but did not know any other member of the Barrett family. Appellant's counsel then asked McMurry whether there was anything McMurry knew of that would affect his performance as a juror. McMurry responded:

> "Not being completely familiar with all that should be brought out, there is nothing that I know of, no, sir."

Appellant asked no further questions and accepted McMurry as a juror.

At a hearing on appellant's amended motion for a new trial, McMurry testified that his wife had known the Barretts since 1963, when she met Mrs. Barrett as a student at Baylor University, that he had met Officer Barrett a week before his death at the Barretts' garage sale, and that he had attended both the church and cemetery services at Officer Barrett's funeral. McMurry testified that Officer Barrett's sister-in-law was on the Sunday School roll of his church and that he considered contacting Officer Barrett's brother to counsel him concerning Barrett's death. McMurry also stated that he knew the purpose of the voir dire questions was to elicit information relevant to his selection as a juror.

█ When a prejudiced or biased juror is selected without fault or lack of diligence on the part of defense counsel, such counsel acting in good faith on the juror's responses and having no knowledge of their inaccuracy, a new trial should be granted. *Salazar v. State*, 562 S.W.2d 480 (Tex.Cr.App. 1978); *Norwood v. State*, 123 Tex.Cr.R. 134, 58 S.W.2d 100 (Tex.Cr.App. 1933); *Adams v. State*, 92 Tex.Cr.R. 264, 243 S.W. 474 (1921). In this case it is not clear from McMurry's testimony that he was prejudiced against appellant by reason of his acquaintance with Officer Barrett or his family. McMurry never met the Barretts until the week before the officer's death, and McMurry's wife had not seen the Barretts since her student days eleven years earlier. McMurry only spoke to the Barretts for thirty-five or forty-five minutes. As a minister McMurry attended funerals frequently; he testified that he "very likely" would have attended Barrett's funeral regardless of his wife's acquaintance because Barrett's sister-in-law was on the Sunday School roll of his church. Although he saw many uniformed policemen at the funeral, he did not speak to any of them, nor did he speak to Barrett's wife. He never met Barrett's sister-in-law or brother. Finally, McMurry testified that he did not discuss his acquaintance with Barrett during jury delibera-

tions and made his decision in the case solely on the basis of evidence presented at trial.

On voir dire, when appellant's counsel elicited that McMurry met Mrs. Barrett at the garage sale at the Barretts' residence, he did not ask whether McMurry had also met Officer Barrett there, nor did he inquire about the extent of McMurry's acquaintanceship with Mrs. Barrett, even though Mrs. Barrett was listed as a prospective witness on the State's witness list filed two days earlier. Compare *Lamkin v. State*, 165 Tex.Cr.R. 11, 301 S.W.2d 922 (1957), cert. denied 355 U.S. 59, 78 S.Ct. 137, 2 L.Ed.2d 107 (1957). Moreover, McMurry's quoted response to appellant's counsel's final question openly acknowledged that McMurry was unsure of what should be brought out and should have put appellant's counsel on notice that further examination might reveal something relevant. McMurry's response invited further investigation, but defense counsel did not pursue the matter. Our holding in *Babin v. State*, 149 Tex.Cr.R. 339, 194 S.W.2d 563 (1946) (Opinion on Appellant's Motion for Rehearing) is directly in point:

"We do not have here a case where the juror, upon his voir dire examination, testified falsely to questions propounded, whereby appellant and his counsel were misled. Nor does the appellant contend that the juror intentionally deceived him. To the contrary, appellant's complaint is that the juror did not volunteer all the information touching his acquaintance and relations with the deceased and that, by reason thereof, his bias and unfairness as a juror were shown.

"The answer of the juror that he 'knew him (the deceased) when I seen him,' was sufficient to place appellant upon notice that there was an acquaintance existing between the prospective juror and the deceased. If appellant desired to know the extent of that acquaintance, he should have inquired of the juror.

"Every fact which the appellant ascertained after conviction relative to the acquaintance and relations between the juror and the deceased could have been ascertained by questioning the juror at the time of the voir dire examination. That it was not developed was because appellant did not interrogate the juror relative thereto.

"To agree with appellant's contention would be to hold that the mere failure of a prospective juror to volunteer full information as to his prior acquaintance and relations with the deceased in a murder case, stamps such a juror as unfair. This we are unwilling to do. See *Lera v. State*, 144 Tex.Cr.R. 619, 165 S.W.2d 92."

██ Appellant argues that counsel must be able to rely to some extent on the juror to disclose relevant information in response to general questions; otherwise the voir dire would become interminable and counsel would have to approach each venireman as an adverse witness, thereby alienating the venireman as a prospective juror. We do not believe that several additional questions concerning what further information McMurry might have would cause undue delay or be construed as harassment or hostility on defense counsel's part, especially in light of McMurry's expressed uncertainty about what should be brought out. No error is shown.

We abate the appeal and remand the cause to the trial court to empanel a jury within ninety days to determine whether the appellant was competent to stand trial when he was tried in October, 1976. A record of that proceeding shall be prepared in the manner required by Art. 40.09, V.A. C.C.P. and transmitted to this Court for further disposition.

It is so ordered.

DOUGLAS, PHILLIPS and CLINTON, JJ., not participating.

## OPINION ON APPEAL AFTER ABATEMENT

DALLY, Judge.

The cause was remanded for a retrial on competency. The retrial on competency has now been held and the appellant found

competent to stand trial at the time of the original proceeding. We will now reinstate the appeal and consider the matters raised by the appellant which relate to the proceedings after abatement.

The appellant contends that a statement made and a question asked during voir dire examination of the jurors by the prosecutor so tainted and prejudiced the jurors that it was impossible for the appellant to receive a full, fair, and meaningful competency hearing.

The first comment complained of by the appellant was as follows:

"Of course, the question here—the question here is competency. Now, [defense counsel] made a big point—in fact, he touched on it three or four times—we're talking about a question of competency, we're not talking about anybody trying to 'beat the rap' by the insanity defense, a lot of people think that is a way to 'beat the rap.' That's not what we're talking about here today.

"You should understand, though, that what we're talking about here today is, nonetheless, important. Because, I think you can understand, if a person is found incompetent to stand trial, in certain cases, if the evidence that he brought in was that he was suffering the same thing at the date of the offense, then, a jury verdict that he was incompetent at some time later, would help an insanity defense."

Appellant objected but was overruled. The prosecutor went on to add:

"Now, what I'm getting at is this: That is why we submit this issue to a jury, because we don't want it just to be left up to a doctor, or a judge, we want a jury to hear all the conflicting evidence and then decide. And then decide. And it is important—it's an important issue—but, it has nothing to do with guilt or innocence, and we don't want you even considering that. In fact, I think I agree—I don't recall if it will be in Court's charge or not—but you shouldn't consider the facts of the case. But that is the law, anyway, and we don't want you

to be considering them. We don't want you to be thinking about guilt or innocence, we want you to be thinking about that very narrow, limited issue that you're going to hear evidence on, which has to do with a person's state of mind on a given date some three years ago."

The complained of question is as follows:

"Okay. Now, let me ask you this: is there anybody here that feels like a person who commits—now please understand, I'm not asking any facts about this case right now. I'm talking about a hypothetical case. Those of you who may know some of the facts about this case, please disregard them with regard to this question.

"Is there anybody here that feels like anybody that commits, say, a particular brutal crime, is just automatically crazy? In other words, you say, golly, anybody that would do that is crazy?"

The appellant objected and was again overruled. The prosecutor then stated:

"I don't want ya'll to think about this individual case. Now, I want to make that perfectly clear.

"But is there anybody that would think that—just say to themselves—my god, anybody that would do something like that is crazy?"

Appellant argues that the statements made by the prosecutor were an attempt to confuse, taint, and prejudice the jury. He contends that these comments brought before the competency jury evidence of the offense and were a misstatement of law.

A defendant's competency must be determined in a hearing separate from the trial on the merits. *Townsend v. State*, 427 S.W.2d 55 (Tex.Cr.App. 1968). Furthermore, it is improper to introduce evidence of the offense itself into the competency hearing. *Townsend v. State*, supra; *Ex parte Hagans*, 558 S.W.2d 457 (Tex.Cr.App. 1977).

As was stated in *Ex parte Hagans*, supra:

"The necessity of the separate hearing on the question of competency is so that the determination of an accused's compe-

tency can be made 'uncluttered by the evidence of the offense itself.' *Townsend v. State*, 427 S.W.2d 55, 63 (Tex.Cr.App. 1968). Such separate uncluttered hearing before a jury makes it easier to determine fairly the issue of competency without introducing facts which might tend to cloud the issue at hand, 'facts which alone might well so stir the minds of the jury as to make difficult the exercise of calm judgment upon the question of present [incompetency],' *Ramirez v. State*, 92 Tex.Cr.R. 38, 241 S.W. 1020, 1021 (1922)." In short, evidence of the crime might adversely affect the determination of competency by confusing the jury in deciding that issue and by arousing unfair prejudice against the accused. *Ex parte Locklin*, 583 S.W.2d 787 (Tex.Cr.App. 1979).

However, not every mention of evidence of the crime itself will be prejudicial. *Martin v. Estelle*, 546 F.2d 177 (5th Cir. 1977), cert. denied 431 U.S. 971, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977). The evidence of the offense presented to the competency jury must be of such a nature as to deny the accused a fair and impartial determination of his competency. In *Bruce v. Estelle*, 483 F.2d 1031 (5th Cir. 1973), cert. denied 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977), the prosecutor during closing argument in a competency trial told the jurors that the defendant would go free and could not be tried again if the jury found the defendant incompetent. He added that the defendant was trying to pull something over the jurors and it was a way for him to escape from his sentence of life imprisonment for the offense of murder with malice. The court found that the comments "infected the whole decision-making process of the jury" and that the "highly prejudicial remarks uttered by the prosecutor jeopardize[d] the jury's deliberative processes and hence infringe upon the accused's right to a fair hearing on the merits of the case." The prosecutor in *Martin v. Estelle*, supra, committed error when he continuously introduced material relevant only to the offense and argued that if the defendant was found incompetent he would be "back on the streets." In the appellant's previous

competency hearing this Court found error when the prosecutor stated that the competency hearing was appellant's "best hope for beating this thing," that he would go free if incompetent, and referred to testimony that the appellant had killed a Waco policeman. These cases are indicative of the extent of harm and prejudice to a jury's deliberation that can be created by the introduction of evidence of the offense itself.

However, in the present case the statements made were general. There was no mention that a finding of incompetency would result in the release of the appellant. The statements did not include any reference to evidence of the offense or to the specific offense itself. The jury could possibly infer that the case involved a "brutal crime;" however, the prosecutor repeatedly stressed that the jurors were not to consider the facts of the offense. Further, the record reveals no other comments or questions by the prosecutor which could be construed as bringing evidence of the offense before the jury. We conclude in the absence of any other prejudicial remarks, the comment and question by the prosecutor did not taint, prejudice or confuse the jury so as to deprive the appellant of a fair determination of competency.

The appeal on the merits which was abated is now reinstated. Since we found no reversible error in the trial on the merits, the judgment is now affirmed.

DOUGLAS, PHILLIPS and CLINTON, JJ., not participating.